13224

ATLANTIC JOINT STOCK LAND BANK OF RALEIGH v.
LATTA ET AL.

(162 S. E., 68)

*Mr. Preston B. Thames,* for appellants,

*Mr. Samuel Want,* for respondent,

January 12, 1932.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

The plaintiff instituted this action for the foreclosure of a real estate mortgage in the Court of Common Pleas for Darlington County. The defendant, Sue Early Latta, is the mortgagor. After the execution of the mortgage, she sub-divided the mortgaged premises among her children, parties defendant, and made conveyances to them of several tracts.

The plaintiff alleged that the original mortgage debt was $22,000.00, and, at the time of the institution of the suit, that the sum due was $17,859.92, exclusive of interest and other items. The plaintiff alleged defaults under the terms of

the mortgage at the time of the commencement of the action in the nonpayment of two mortgage installments, due, respectively, on November 1, 1930, and May 1, 1931, each in the sum of $954.36; in the nonpayment of taxes and drainage assessments for the years 1928, 1929, and 1930, amounting to $4,000.00; and the nonpayment of an insurance premium, which plaintiff was required to pay.

Under the terms of the mortgage, as alleged in the complaint, the mortgagor assigned and transferred to the mortgagee all the rents and income from the mortgaged premises for each and every year any installment of the mortgage note remained unpaid, together with all rights and remedies for enforcing collection of the same; and that upon institution of a suit for foreclosure the mortgagee should be entitled to have a receiver appointed to take charge of the mortgaged premises, together with all rents, etc., and to hold the same subject to the orders of the Court.

The mortgagor and her grantees, who are the appellants here, answered the complaint, but made little denial of the material allegations contained therein. Those defendants set up a special defense and also a counterclaim; the two being in practically identical terms.

The counterclaim was set out at great length. It is unnecessary to quote all its language. Therein the counterclaiming defendants alleged that the plaintiff had damaged them in the sum of $50,000.00, in that the plaintiff had breached a contract extending time for the payment of the mortgage debt. We take from the argument of the appellants their summary as to the allegations of the counterclaim.

"The counterclaim attempts to outline in detail the several negotiations with respondent's (plaintiff's) officers and field representative, which led up to and resulted as appellants (defendants) allege, in a contract based upon a legal consideration, to extend time for payment of the past due items of the mortgage debt. The gist of the counterclaim is as follows:

"That on January 20, 1931, respondent (plaintiff) advised appellant (defendant) that 'it will be agreeable with us for you and Mr. Hawkins (respondent's field agent) to continue to work out this situation for Mrs. Early'; that thereupon appellants (defendants) through their attorney, rented out as much of the premises as possible for $5.00 per acre, receiving contracts aggregating approximately $1,-500.00, waiving rent for each tenant, except one, to the extent of $200.00, in consideration of which (contracts) an extension of said mortgage was granted within which to sell said premises; that Hawkins brought to appellant's (defendant's) counsel, C. E. Byrd to handle the sales and in his presence a tentative agreement was made for Byrd to sell the land and that subsequently Hawkins returned to appellant's (defendant's) counsel with Byrd and a definite arrangement to carry through sales was made with Byrd, in pursuance of which Byrd embarked upon his duties in connection therewith; that respondent (plaintiff) retarded Byrd's efforts to sell and without notice placed the mortgage for foreclosure; that appellant's (defendant's) counsel went to Raleigh, interviewed the officers of respondent (plaintiff) urging respondent (plaintiff) to keep its agreement and as a result two of respondent's (plaintiff's) officers came from Raleigh to the premises and there and then gave Byrd instructions as to obtaining options on respondent's (plaintiff's) forms, securing option deposits and to bring the same to Raleigh on Friday, August 7, 1931; that Byrd followed such instructions but in violation of its agreement, respondent (plaintiff) on August 6, 1931, began foreclosure of its mortgage."

The plaintiff demurred to the counterclaim on five grounds, and, upon a hearing, his Honor, Circuit Judge Dennis, sustained the same and dismissed the counterclaim.

From the order sustaining the demurrer comes this appeal.

The Circuit Judge gave no reasons for his order. We may assume, therefore, that he considered all five grounds of the demurrer to be good. It is our opinion

that the order should be sustained here on the first ground interposed, and for that reason we shall not take the trouble to refer to the other four grounds.

The first ground was: "The alleged agreement between the plaintiff and the said defendants, as set forth in the counterclaim, has no legal or valuable consideration to support it, and is *nudum pactum.*"

The only consideration alleged is the assignment of the 1931 rent contracts. The value of these were practically destroyed when the appellants waived the liens created under the contracts.

Aside from the mentioned fact, however, we do not think the rent contracts could be relied upon as a legal consideration, because it is provided in the mortgage that, after a default occurred in the payment of any of the installments due on the mortgage note, all the rents and profits of the land were, by the terms of the mortgage, assigned and transferred to the mortgagee. Accordingly, the consideration relied upon by the appellants to support the alleged agreement consisted of the doing of something which had already been done in legal effect, or which at least the appellants were required to do under the terms of their original obligation.

It is elementary that the consideration for a contract cannot consist of the doing of an act which the moving party was in any event required to do as a matter of law or existing contract.

"The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit." 13 C. J., 353, citing *Colcock v. Louisville, etc., R. Co.,* 1 Strob. (32 S. C. Law), 329. To the same effect is *Nesbitt v. L. C. & C. Railroad Co.,* 2 Speers. (29 S. C. Law), 697.

"The performance of a duty imposed by law or arising from a contract with the other party is not a sufficient consideration, because the performance of such duty involves no detriment to the promisee. * * * A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound." 6 R. C. L., 664.

"Again, it is well settled that an agreement for the extension of time, without consideration, cannot be enforced. The mortgagor may and probably would want the agreement to be of such nature that the mortgagee could not arbitrarily violate it and bring suit before the extension agreed upon had expired; but, to make it such, there must be some consideration for it." *Reynolds v. Price,* 88 S. C., 525, 71 S. E., 51, 53.

The judgment of this Court is that the order appealed from be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON, Circuit Judge, concur.

MR. JUSTICE COTHRAN did not participate on account of illness.