18184

A. R. CASTELL, Jr., Respondent, v. STEPHENSON FINANCE COMPANY, and Superior Automobile Insurance Company, Defendants, of whom Stephenson Finance Company is, Appellant.

(135 S. E. (2d) 311)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Carter & Hill,* of Greenville, *for Respondent,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant, in Reply,*

March 16, 1964.

LEWIS, Justice.

The plaintiff A. R. Castell recovered judgment for both actual and punitive damages against the defendant Stephenson Finance Company for the alleged conversion of his motor truck. The defendant has appealed from this judgment and, under our view of the record, the only question for decision is whether there was any evidence, viewed in the light most favorable to the plaintiff, to sustain the conclusion that there was a conversion of the property of the plaintiff by the defendant.

The plaintiff purchased a truck on May 16, 1959, and, in consideration of the sale, gave as security his conditional sale contract to the seller, providing for the payment of $8,028.00 in monthly installments of $334.50 over a two-year period. This contract was thereupon assigned to the defendant Stephenson Finance Company, hereafter called Stephenson. At the time of the sale, a collision insurance policy covering the truck, with a $500.00 deductible clause, was issued by the Superior Automobile Insurance Company, a defendant in the lower court but not a party to this appeal. Thereafter, the plaintiff made payments in the months of June, July, September, October, November and December of 1959, in February, 1960, and two payments in April, 1960. No other installments were paid on the contract.

The plaintiff was delinquent in his payments and, on June 8, 1960, Stephenson wrote to him demanding payment

by June 12, 1960, of the entire balance due. Unknown to the parties at that time, the vehicle had been involved in an accident in the State of Tennessee on June 7, 1960. Subsequently, pursuant to written authority of the plaintiff, the wrecked truck was brought back to a garage in Greenville, South Carolina, where it remained, unrepaired, until sold at public auction on November 3, 1960, by Stephenson.

Following the return of the truck to Greenville, the plaintiff filed claim with the insurance company for the collision loss. Considerable negotiations followed between the plaintiff and the insurance company relative to a settlement of the insurance claim, and between the plaintiff and Stephenson concerning the past due indebtedness of the plaintiff under the conditional sale contract. Agreement between the plaintiff and the insurance company was not reached and, finally, Stephenson and the insurance company agreed upon a settlement of the collision loss, which was paid directly to Stephenson on August 29, 1960, and credited, less certain undisputed charges, to plaintiff's indebtedness. Further negotiations followed between the plaintiff and Stephenson in an attempt to satisfactorily adjust the indebtedness of the plaintiff, without success. Finally, Stephenson, claiming that the plaintiff was in default in his payments, sold the truck at public auction on November 3, 1960. The truck was bid in by Stephenson at the sale for the sum of $900.00 which was credited on the indebtedness of plaintiff. After all credits, there remained a balance due under the contract and demand was made upon the plaintiff to pay such deficiency, which was refused.

Thereafter, this action was brought by the plaintiff against the defendant Stephenson Finance Company and Superior Automobile Insurance Company. The complaint alleged three causes of action. Under the first and second, it was alleged that Stephenson and Superior, pursuant to a conspiracy between them, settled the claim of the plaintiff for the collision loss for an improper amount and thereby fraudulently breached their contractual obligations to the

plaintiff. In the third cause of action it was alleged that Stephenson had fraudulently converted the plaintiff's truck to its own use by wrongfully selling the same at an invalid public sale and bidding the property in at an unconscionably low price. The answer of Stephenson denied the material allegations of the complaint and alleged that its actions in the matter were taken after default by the plaintiff in the payment of the indebtedness due it and pursuant to the terms and conditions of the conditional sale contract executed by the plaintiff.

Upon the trial of the case, after the refusal by the trial judge of timely motions of the defendants for a nonsuit and directed verdict in their favor, the jury returned a verdict in favor of both defendants on the first and second causes of action, thereby exonerating both Stephenson and Superior of any wrongdoing in connection with the settlement of the insurance claim of the plaintiff for collision damage, but rendered a verdict for the plaintiff under the third cause of action against Stephenson in the sum of $2,-200.00, actual damages, and $11,000.00, punitive damages for the alleged conversion of plaintiff's property. The subsequent motions of Stephenson for judgment notwithstanding the verdict and, in the alternative, for a new trial were denied by the lower court, except to require the remission by the plaintiff of the sum of $500.00 of the actual damages awarded. This appeal by Stephenson followed and relates solely to the cause of action for conversion.

The jury found that Stephenson was guilty of a conversion of the plaintiff's property, which has been defined as "[a]n unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another or the alternation of their condition or the exclusion of an owner's rights." *Commercial Credit Co. v. Cook et al.*, 165 S. C. 287, 164 S. E. 17, 19. Conversion is a tortious act and "may arise either by a wrongful taking of the chattel or by some other illegal assumption of ownership, by illegally using or misusing it, or

by wrongful detention." *Young v. Corbitt Motor Truck Co.,* 148 S. C. 511, 146 S. E. 534, 542.

Since conversion is a wrongful act, it cannot arise from the exercise of a legal right. *General Motors Acceptance Corporation v. Hanahan,* 146 S. C. 257, 143 S. E. 820.

The alleged conversion in this case arose out of the assertion by Stephenson of the claimed legal right, upon default in the payments due it under the conditional sale contract, to take possession of and sell the mortgaged property. The plaintiff bases his charge, that Stephenson was guilty of a conversion of his property upon the grounds (1) that at the time Stephenson sold the property it had no legal right to do so due to an alleged agreement by the defendant to defer payments, and (2) that the property was wrongfully sold for less than its value by the defendant without giving proper notice of such sale.

While the instrument involved here is a conditional sale contract, it is in legal effect a chattel mortgage. *Johnson Cotton Company v. Cannon,* 242 S. C. 42, 129 S. E. (2d) 750.

There can be no doubt that, upon default in the terms of a chattel mortgage, the mortgagee has the right to take possession of the property, either peaceably or by claim and delivery proceedings, and sell the same, applying the proceeds of sale to his debt and paying the surplus, if any, to the mortgagor. *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731. As stated in the case of *Lee v. National Furniture Stores, Inc.,* 163 S. C. 204, 161 S. E. 450, 451: "It is the well-settled law of this state that, after condition broken under a chattel mortgage or title retention contract, the title, as well as the right to possession of the property covered thereby, immediately unite in the mortgagee or seller. He then can retake the chattel either peaceably or by claim and delivery proceedings. Under such

circumstances an action for conversion of the property re-taken, of course, would not lie."

The right of the mortgagee to possession of the mortgaged property depends upon whether or not there has been default or condition broken in the terms of the mortgage; and a mortgagee is guilty of a conversion when he takes possession of the property and sells it before he is entitled to under the terms of the mortgage or agreement of the parties. *Parker v. General Motors Acceptance Corporation,* 204 S. C. 547, 30 S. E. (2d) 589, 153 A. L. R. 763.

Stephenson contends in this case that the plaintiff was in default in the payments due under the conditional sale contract. If the plaintiff was in default in his payments, Stephenson had a legal right to take peaceable possession of the property. Whether or not the plaintiff was in default in the monthly payments depends upon whether Stephenson extended the time for making such payments, for it is undisputed that the plaintiff was delinquent in the installments due under the contract at the time that Stephenson took possession of the truck and sold it.

The record shows that, after the truck was damaged in the collision on June 7, 1960, there had been considerable negotiations between the parties for settlement of Stephenson's claim against the plaintiff. Included in these negotiations was the possibility of repairing the truck and the resumption of payments by the plaintiff under the contract. The plaintiff alleged in his complaint, as the basis of his claim that Stephenson wrongfully took possession of his truck and sold it, that, after his truck was practically destroyed in the collision, he was unable to continue payments under his contract and Stephenson agreed in July, 1960, to waive and forego monthly payments until such time as the plaintiff could obtain a settlement of his collision damage claim against the insurance company or repair the truck. Specifically, the plaintiff alleged that Stephenson agreed to postpone payments upon "plaintiff's promise to

pay the indebtedness upon the settlement of the claim or resume his obligation once repair was made." While plaintiff testified as to the foregoing agreement, he also testified that there was a subsequent agreement between the parties in the latter part of August or the first part of September, 1960, presumably superseding the one alleged in the complaint. The plaintiff testified that, after long negotiations with Stephenson concerning his indebtedness and the possibility of repairing the truck, he finally agreed in order to retire the indebtedness, for Stephenson to get salvage bids on the truck and as much as it could out of the insurance company, in addition to which he would pay five or six hundred dollars, if necessary. In the words of the plaintiff, he finally agreed that Stephenson "could get salvage bids on the truck and they could handle it and in the meantime he (Stephenson's agent) could try to get all the settlement he could get out of the insurance company and I would put my $500.00 deductible into it, and if necessary put five or six hundred dollars into it if that would retire the debt, and I would forfeit any equity I might have in the truck and just lose it." The plaintiff contends that Stephenson failed to secure salvage bids and sold the truck at an invalid public sale. The verdict of the jury exonerated Stephenson of any wrongdoing in connection with the settlement of the insurance claim.

Certainly, in view of the foregoing testimony of the plaintiff, there can be no valid claim that the parties at that time contemplated the repair of the truck or further monthly payments under the contract. Rather, the plaintiff's own testimony conclusively shows that he was looking to a liquidation of the past due indebtedness from three sources, to wit: (1) the sale of the truck salvage, (2) the proceeds from a settlement of the insurance claim, and (3) the payment by plaintiff of the sum of five or six hundred dollars in addition to the above, if necessary. It is undisputed that plaintiff was delinquent in his payments. Any agreement that might have previously existed to waive

payments under the contract was, by plaintiff's own testimony, superseded by the agreement to liquidate the indebtedness in the foregoing manner. This agreement was a recognition that the contract was in default. Assuming that Stephenson violated the agreement to secure salvage bids, as contended by plaintiff, the violation of such agreement would not alter the basic fact that the contract was in default and that Stephenson was thereby legally entitled to possession of the property. The agreement to secure bids could only affect the manner of sale of the property and not the right to possession. The claim of plaintiff that the contract was not in default because of an agreement to defer payments simply finds no support in the record. Since the plaintiff was in default, Stephenson had a legal right to peaceably take possession of the truck and sell it, which it did. The exercise of such legal right, as above pointed out, could not form the basis of an action for conversion of the truck.

Assuming, however, that the foregoing agreement was entered into between the parties, it was clearly invalid in that there was no consideration to support it. The plaintiff only agreed to liquidate the indebtedness, which he was already obligated to do. The authorities are clear that an agreement to do that which one is already legally bound to do is not sufficient consideration to support a new contract. *Rabon v. State Finance Corporation,* 203 S. C. 183, 26 S. E. (2d) 501; *Atlantic Joint Stock Land Bank of Raleigh v. Latta,* 164 S. C. 56, 162 S. E. 68; *Marion Production Credit Ass'n. v. Smith,* 221 S. C. 172, 69 S. E. (2d) 705.

The charge that Stephenson was guilty of a conversion of plaintiff's truck was apparently based upon the further ground that the truck was wrongfully sold at an invalid public sale and bid in by Stephenson at an unconscionably low price. This ground is based upon the dual position that (1) Stephenson violated the alleged agreement with the plaintiff to secure private bids for the truck salvage,

and (2) the truck was sold at public sale without posting the notices thereof required by Section 45-164 of the 1962 Code of Laws.

Section 45-164 prescribes the notice required in advertising mortgaged personal property for sale by the mortgagee. This section provides that the mortgagee "shall advertise the time and place of such sale by posting a notice thereof, in writing, at least fifteen days before such sale in three public places in the county in which such personal property may be found, one of which shall be the courthouse door, or shall publish such notice at least two weeks in a newspaper published in his county, unless the person making such * * *, mortgage * * *, shall consent, or shall have consented, to a sale in some other mode or at some other notice, such consent to be expressed in writing."

This statute specifically permits the sale of personal property under a mortgage in a different manner from the statutory method, provided the mortgagor consents to a different method in writing. *Fretwell v. Carter*, 78 S. C. 531, 59 S. E. 639; *Darnall & Susong v. Darlington*, 28 S. C. 255, 5 S. E. 620.

As above pointed out, there was no valid contract between the parties under which Stephenson was required to receive private bids on the property and, admittedly, such was not authorized "in writing" by the plaintiff. Therefore, the consent of plaintiff for Stephensen to receive bids was ineffective to relieve Stephenson of the duty to comply with the requirements of the statute as to the sale of the truck.

While the conditional sale contract in this case contained a specific written agreement of the plaintiff that upon default the property could be sold by the mortgagee at private or public sale, with or without notice, such has no material bearing upon the issue here, since the record conclusively shows that the property was sold at public sale after the notice required by Section 45-164.

The testimony was undisputed that the truck in this case was sold at public sale in accordance with the requirements of the foregoing statute. An agent of Stephenson testified categorically that four notices of the sale were posted, and there is no testimony to the contrary. He said that he posted one notice at the courthouse, one at a filling station in Greenville, one at Bishop's Garage where the truck was stored, and another on the windshield of the truck. The deputy sheriff who conducted the sale stated that, due to the lapse of time since the sale, he had no independent recollection of the posting of the notices, but testified as to what was generally done by him in such cases. He did recall that he saw a notice posted on the windshield of the truck at the time of the sale. These notices were posted on October 18, 1960, giving the time of the sale as 10 A. M., on November 3, 1960, and the place as Bishop's Garage in Greenville, South Carolina.

The sale was held at the time and place advertised and the truck was bid in by Stephenson for the sum of $900.00. The plaintiff testified that the truck was worth approximately $3,000.00 and contends that Stephenson bid in the property at an unconscionably low price. It is unnecessary for us to determine whether the property was sold for less than its value. For, the mere fact alone that a sale by the mortgagee results in the property bringing less than its value would not constitute a conversion. 10 Am. Jur. 882, Section 259; *McInerney & Conway Finance Corp. v. Smith,* 42 Wyo. 380, 295 P. 273, 73 A. L. R. 851; Annotation: 73 A. L. R. 859.

The record in this case fails to sustain the charge that the defendant was guilty of a conversion of plaintiff's property, and the lower court should have granted the defendant's motion for a directed verdict in its favor.

Reversed and remanded for entry of judgment in favor of the defendant.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.