In re Curtis K. **BERND** and Joann Bernd, Debtors.

The **ENERGY SHED, INC.,** Plaintiff,

v.

Michael **CARDANAS,** Administrator of Small Business Administration, Defendant.

Bankruptcy No. 81–00697.
Adv. No. 81–0538.

United States Bankruptcy Court, E. D. Wisconsin.

April 30, 1982.

---

Melvin K. Washington, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

David P. Jendrzejek, Wiese & Cox, Ltd., Minneapolis, Minn., for plaintiff.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This is an adversary proceeding commenced by The Energy Shed, Inc. (hereinafter referred to as "Energy") against the Administrator of the U. S. Small Business Administration (hereinafter referred to as "SBA") seeking a determination of priorities between competing security interests in the proceeds from the sale of inventory.

The material and undisputed facts established by the pleadings, records and files in this case can be summarized as follows:

Curtis and Joann Bernd, doing business as "Energy Shed of Appleton" (hereinafter referred to as "Debtor") were engaged in the sale of energy conservation products and alternative energy products under a franchise agreement with Energy entered into on June 1, 1979. Energy concedes that it never perfected any security interest in the inventory. On October 2, 1979, Debtor obtained an SBA loan in the sum of $27,600 which was secured by Debtor's assets, specifically including inventory. SBA's security agreement was perfected by the filing of a financing statement August 30, 1979 with the Secretary of the State of Wisconsin. On March 10, 1981, Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. On March 24, 1981, the trustee in bankruptcy abandoned his interest in the inventory. On April 24, 1981, the trustee filed his report of no distribution and the bankruptcy case was closed on November 30, 1981. On June 15, 1981, the inventory was sold by SBA.[1] Energy claims that it is entitled to $15,176.44 of the inventory sale proceeds realized by SBA, contending that a portion of it ($9,911.24) was from merchandise which Energy had conveyed to Debtor under its franchise agreement and the balance ($5,258.20) was from merchandise consigned by Energy to Debtor. Energy states further that SBA's financing statement is void for reasons developed in its brief. Energy points out that the financing statement was labeled a "purchase money security agreement" when in fact it was not. In addition, Energy asserts that SBA had actual knowledge of the franchise agreement between the parties and that such knowledge adversely affected SBA's rights. SBA denies that it had such knowledge.

Energy states its purpose in commencing this adversary proceeding is to obtain a court declaration that its security interest is superior to any interest of SBA or of the trustee in bankruptcy.[2]

Comprehensive briefs were submitted to the court by both parties, dealing with priority of interest between competing parties.

---

1. There is no indication in the briefs or elsewhere as to the gross amount of proceeds realized from the sale of this inventory.

2. The trustee in bankruptcy, having abandoned his interest in the inventory, is not named as a party in these proceedings.

This case is replete with complicated issues of law and fact as framed in the respective memorandum briefs and pleadings. While there is a temptation to come to grips with some very intriguing issues raised, the immediate question which presents itself is whether or not this court is the appropriate forum to hear this matter in the first place, after taking into account the provisions of 28 U.S.C. § 1471.[3]

This question is not novel. It has been considered by other bankruptcy courts. Where courts are satisfied that the outcome of the proceedings will have no effect upon the administration of the particular bankruptcy case involved, they have declined to proceed any further. Some courts have based this conclusion upon grounds of abstention under 28 U.S.C. § 1471(d). *In re Lyco Truck Sales, Inc.* (M.D.Pa.1981).[4] Other courts have come to the same conclusion based upon lack of jurisdiction under 28 U.S.C. § 1471(b). *In re Lunsford*, 12 B.R. 762 (Bkrtcy.M.D.Ala.1981), *In re Curtina International*, 15 B.R. 993, 8 B.C.D. 696 (Bkrtcy.S.D.N.Y.1981).

*Lyco* was a Chapter 11 case involving conflicting security agreements in certain assets of the debtor consisting of trailers. The court was faced with deciding who was entitled to possession of the trailers as between two parties. The dispute did not involve the debtor in possession. Judge Thomas C. Gibbons in *Lyco* stated:

"Although the bankruptcy court has jurisdiction over all claims and causes of action relating to bankruptcy matters un-

der the above statute, the court is also given the authority to decline jurisdiction in the interest of justice under subsection (d). *In re Kimrey*, 10 B.R. 466 ([Bkrtcy.] M.D.N.C.1981). Therefore, even if a bankruptcy court determines that it has jurisdiction over a particular adversary proceeding, it may, in its discretion, decline to exercise such jurisdiction.

\*     \*     \*     \*     \*     \*

It is significant to note that the present controversy arises from conflicting security interests in the same property. There is no allegation or suggestion that the estate of the debtor will benefit from an ultimate distribution of the property. The dispute involves two creditors. In fact, the record indicates that the plaintiff has attempted to drop the debtor as a party to the action. We see no basis for assuming jurisdiction of the proceeding whether or not the debtor is a party since the outcome of the litigation has no direct bearing on the debtor's estate."

*In re Lunsford*, 12 B.R. 762, involved a dispute between a landlord of the debtor, who claimed a lien on proceeds from the sale of debtor's crops under Alabama law, and Farmers Home Administration, which had received the proceeds of the sale of the debtor's crops in satisfaction of its loan and security agreement. Adversary proceedings were commenced by the landlord in bankruptcy court against Farmers Home Administration. Judge Rodney R. Steele, in *Lunsford*, ruled, under 28 U.S.C. § 1471(b) that the court did not have sub-

---

**3.** 28 U.S.C. § 1471 provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

**4.** As of this date, although the *Lyco* case has been submitted for publication, there is no case citation available.

ject matter jurisdiction. While recognizing that jurisdiction of the bankruptcy court has been considerably expanded, the court nevertheless decided that there are some kinds of cases not within its jurisdiction. In support of this conclusion, Judge Steele relied upon *Collier on Bankruptcy*, 15th Ed., Vol. I, ¶ 3.01 at pp. 3–49:

> "... conceptually there is no limit to the reach of this jurisdiction, insofar as the matter involved 'arises in or is related to' the title 11 cases. Situations will undoubtedly arise in which the controversy is so tangential to the title 11 case that a court will hold that the case neither arises in nor is related to the title 11 case. In such cases, the bankruptcy court may decide that the exiguous nature of the relationship between the proceeding and the bankruptcy case is such as to fall without the court's jurisdiction. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered."

Judge Steele also observed that the controversy centered around who was entitled to the proceeds as between two secured creditors and that the bankruptcy trustee was making no claim. It then concluded that this controversy was so far removed from the administration of the case and the rights of the creditors generally that the court could not be said to have subject matter jurisdiction.

*In re Curtina*, 15 B.R. 993, 8 B.C.D. 696, involved a private controversy between two parties, neither of which was the debtor or trustee in bankruptcy. The court, using rather colorful language, stated, 15 B.R. 993, 8 B.C.D. at 698:

> "—it inflicts no wound upon the debtor nor will it draw any blood from this stone."

and held that because the action did not relate to or affect the administration of the bankruptcy case, but merely was a dispute between third parties in which the trustee had no interest, it did not have jurisdiction to entertain it under 28 U.S.C. § 1471(b) and (c).

*Curtina* is also significant because neither party raised the jurisdictional issue. Notwithstanding that, the court concluded that jurisdictional questions are of primary consideration and can be raised at any time by a court on its own motion.

When Congress enacted 28 U.S.C. § 1471, it intended bankruptcy courts to hear and resolve controversies which, by otherwise leaving them to be resolved in nonbankruptcy courts, would result in delay in the administration of the bankruptcy cases.

> Dockets of nonbankruptcy courts are likely to be more crowded than those of bankruptcy courts, and the pace of nonbankruptcy litigation is likely to be slower than that of bankruptcy courts. Delay is likely to be particularly prejudicial in reorganization cases, but even in liquidation cases, delay is practically certain to aggravate the deterioration of asset values that is a concomitant of bankruptcy.

Kennedy, *The Bankruptcy Court Under the New Bankruptcy Law: Its Structure and Jurisdiction*, 55 Am.Bankr.L.J. 63, 85 (1981).

This policy is not present in the instant case where the outcome has no effect on the administration of the bankruptcy case which in fact is closed. If there is no other tribunal able to hear controversy between the parties, this court would not abstain, since this would not be in the interest of justice. But the matters and issues involved in this case can be resolved by other courts who have jurisdiction.

After taking into account the particular circumstances of the case at bar, the reasoning of the cited cases and the underlying policy of 28 U.S.C. § 1471, this court is convinced that it should abstain. The broad language in § 1471(b) of Title 28 ("arising in or related to cases under title 11") leads this court to believe that it may well have jurisdiction. But it did not meet and decide this particular issue. Rather, it is persuaded by the reasoning of Judge Gibbons in *Lyco* that even if the court has jurisdiction, it may, in the interest of justice, decline to exercise such jurisdiction under

§ 1471(d) where there is no benefit to the bankruptcy estate from the outcome of the dispute.

What is before this court is a private controversy. Neither party seeks to recover assets for or from the bankruptcy estate. The trustee in bankruptcy has long since abandoned his interest in the subject matter.

Pursuant to 28 U.S.C. § 1471(d), this court accordingly, in the interest of justice, abstains and dismisses this action, without prejudice to the parties.