In re KASH & KARRY WHOLESALE, INC., Debtor.

KASH & KARRY WHOLESALE, INC., Plaintiff,

v.

The CITIZENS & SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Defendant.

and

The CITIZENS & SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Plaintiff,

v.

MULBERRY CORPORATION, Elmer Selmon, Edith J. Myers and George C. Myers, Defendants.

Bankruptcy No. 82–00307. Complaint Nos. 82–0543, 82–0569.

United States Bankruptcy Court, D. South Carolina.

Nov. 23, 1982.

J. Richard Kelly, Greenville, S.C., for debtor.

C.T. Wyche, Greenville, S.C., for Citizens & Southern Nat. Bank.

## OPINION OF THE COURT

J. BRATTON DAVIS, Bankruptcy Judge.

The debtor, Kash & Karry Wholesale, Inc. (hereinafter "debtor"), filed a petition for relief on February 24, 1982, commencing a voluntary Chapter 11 Case (11 U.S.C. § 1101 *et seq.*) in this court. Since that date, the above captioned adversary proceedings with the relief requested therein have been filed as follows:

1. Adversary Proceeding No. 82–0543— *Kash & Karry Wholesale, Inc., Plaintiff vs. The Citizens and Southern National Bank of South Carolina* (hereinafter, the bank), Defendant. The relief sought:

(a) an order, pursuant to 11 U.S.C. § 362(a), staying a South Carolina state court foreclosure action instituted by the bank against a co-obligor and guarantors not in bankruptcy; and

(b) an order, pursuant to 11 U.S.C. § 365, allowing assumption/cure by the debtor of a note, term loan agreement and mortgage as executory contracts.

2. Adversary Proceeding No. 82–0569— Application for Removal of the above-referenced state court foreclosure action, filed by the non-debtor co-obligor and guarantors, and a Motion to Remand same filed by the bank. The non-debtor co-obligor is Mulberry Corporation (hereinafter "Mulberry") and the non-debtor guarantors are Elmer Selmon, Edith J. Myers and George C. Myers (hereinafter "Guarantors").

### FACTS

1. On October 22, 1975, the debtor and Mulberry executed and delivered to the bank their note for $501,000, payable in 120 monthly installments of principal plus interest at 1½% per annum above the commercial prime rate. Debtor and Mulberry also entered into a term loan agreement with the bank. As security for the note, Mulberry executed and delivered to the bank a real estate mortgage on certain real estate owned by Mulberry, and upon a portion (hereinafter "The Premises") of which the debtor presently conducts its business. Elmer Selmon (President of the debtor, formerly a 33⅓%, and at present a 26⅔%, shareholder of the debtor and a member of its Board of Directors; Secretary-Treasurer of Mulberry and a 33⅓% shareholder of Mulberry), George C. Myers (Secretary-Treasurer of the debtor, formerly a 33⅓%, and at present a 26⅔%, shareholder of the debtor and a member of its Board of Directors; President of Mulberry, a 33⅓% shareholder of Mulberry, and a director of Mulberry), and Mrs. Edith J. Myers (Vice-

President, Director and formerly a 33⅓%, and at present a 26⅔%, shareholder of debtor; and director, officer and shareholder of Mulberry) are guarantors of the note.

2. During January and early February, 1982, (and prior thereto) debtor's checking account with the bank was often in an overdrawn status. DeFoy Cudd, Vice-President of the bank, customarily telephoned Mr. Myers, Secretary-Treasurer of debtor, on these occasions. Each time that Mr. Myers received such a call, he either assured Mr. Cudd that sufficient deposits were already in the bank's night depository to cover the overdraft or that he "would take care of it." Thereby the deficiency was obviated.

3. On Wednesday, February 10, 1982, checks drawn on the Debtor's account in the amount of $98,065.10 were presented to the bank for payment. Funds sufficient to cover the checks were not present in the debtor's account, a fact of which the debtor was well aware. The debtor never intended to deposit funds in the account to cover the checks. Rather, debtor was in the process of opening, and, in fact, on February 10, 1982, did open, two accounts at another bank, Bankers Trust. These accounts were opened by George C. Myers in anticipation of debtor's filing for relief under the Bankruptcy Code. On Thursday morning February 11, 1982 the $98,065.10 overdraft appeared on the bank's records. Although the testimony is in conflict, the Court accepts Mr. Cudd's testimony and finds that Mr. Cudd immediately attempted to call Mr. Myers, finally reaching him around noon on Thursday, February 11. Mr. Cudd informed Mr. Myers that an overdraft of approximately $98,000 existed. Mr. Myers responded, "I can't talk now. I'll take care of it." Based upon this assurance and based upon the previous custom and practice between the parties, the bank did not return the checks prior to its midnight deadline on Thursday, February 11. The debtor, however, did not make a deposit curing this overdraft; he never "took care of it." Despite repeated efforts, the next time that Mr. Cudd reached Mr. Myers, was at approximately 6:00 p.m. on Friday, February 12, 1982, when Mr. Myers answered his home telephone. During this conversation, Mr. Myers advised Mr. Cudd that no deposits would be made at the bank and that Mr. Cudd would have to talk to the debtor's attorneys if he had any questions.

4. At least as early as February 10, 1982 debtor had determined not to make further deposits at the bank. The debtor knew that there were not, and would not be, funds at the bank sufficient to cover the $98,065.10 of checks. The debtor knowingly failed to advise the bank of this decision or of debtor's opening substitute accounts at Banker's Trust of South Carolina on Wednesday, February 10, 1982. In light of the debtor's past custom and practice regarding overdrafts and Mr. Myers' assurance to the bank that "they would take care of it" the bank did not return the checks before the midnight deadline.

5. On February 17, 1982, Mulberry (as Lessor) and the debtor (as Lessee) entered into a written Lease Agreement covering a portion of The Premises for a term beginning February 1, 1982 and ending February 28, 1983.

6. On February 22, 1982, debtor and Mulberry Corporation failed to make the February 22, 1982 monthly installment payment under the real estate note to the bank when it became due. Such payment was to be made by the bank's drafting Mulberry's account, but sufficient funds to cover the payment were not then—or subsequently—in the account.

7. On February 23, 1982, the bank delivered to the debtor and Mulberry a written notice of default and acceleration of the real estate note and demanded payment in full.

8. On February 24, 1982, debtor filed this Chapter 11 Case. Mulberry and the Guarantors are not debtors in this case and have not filed for relief under the Bankruptcy Code.

9. In March of 1982, a clerical employee of the bank sent a computer notice to Mulberry for $15,792.22 (February 22 and March 22, 1982 installment payments due

under the note). This notice, captioned "Commercial Loan Statement", was not intended as an offer by the bank to permit reinstatement of the note. The notice was sent through inadvertence—this employee was not aware that the note had been accelerated. In light of the bank's February 23 default and acceleration notice, debtor could not reasonably conclude that this computer reminder was an offer to permit reinstatement. There was nothing on the notice to indicate an intention by the bank to reinstate the loan.

10. On March 23, 1982, the bank received from Mulberry a $15,792.22 uncertified check # 643 of the debtor payable to Mulberry and endorsed to the order of the bank. That same day the bank returned the check to Mulberry, with a letter referring to the February 23 default and acceleration letter. Because this check was returned to Mulberry the same day it was received, debtor and Mulberry did not suffer any detriment from having forwarded it to the bank in the first place.

11. On May 20, 1982, the bank filed its complaint No. 82–CP–23–1816 in the Court of Common Pleas, State of South Carolina, County of Greenville, initiating a mortgage foreclosure proceeding against the real estate owned by Mulberry and seeking a deficiency judgment against Mulberry (as co-obligor on the note) and Elmer Selmon, Edith J. Myers and George C. Myers as guarantors. The debtor was not named as a defendant in said action, and none of the defendants in the action is presently a debtor in a bankruptcy case. The debtor's only interest in the property, which is the subject of the state court foreclosure, is a leasehold estate in a portion of the premises. The foreclosure action of the bank affects only the fee remainder interest of Mulberry and does not seek to disturb debtor's leasehold interest under its February 17, 1982 Lease Agreement.

12. Reinstatement of the real estate note by debtor would serve only to deplete the debtor's estate for the benefit of Mulberry. The only arguable benefit that debtor might derive by doing this would be to preserve Mulberry as a "friendly" landlord, a benefit which is speculative at best in light of the fact that the debtor has indicated (in the debtor's Schedules filed with the Court in this case) that Mulberry has a claim for back rent in the amount of $187,328.98.

## DISCUSSION AND CONCLUSIONS

█ 1. The note, term loan agreement and mortgage are not "executory contracts" which can be assumed by the Debtor under 11 U.S.C. § 365. A mere debt, evidenced by a note, is not an executory contract. *Bayliss v. Rood,* 424 F.2d 142 (4th Cir.1970). *See also In re Whatley,* 16 B.R. 394 (Bkrtcy. N.D.Ohio 1982). The legislative history under Section 365 (11 U.S.C. § 365) of the Bankruptcy Code reads, in pertinent part:

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. *A note is not usually an executory contract* if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.

(Emphasis supplied). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977); See S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

█ 2. The bank did not waive its acceleration of the note by sending the March 1982 computer notice. Under South Carolina law it is clear that a debtor cannot avoid the consequences of its default even if a creditor has expressly promised to refrain from foreclosure, something which the bank did not do, in return for resumed payments on the obligation.

In *Rabon v. State Finance Corp.,* 203 S.C. 183, 26 S.E.2d 501 (1943), a creditor allegedly promised the debtor that he would be permitted to "catch up" the payments then in arrears. The South Carolina Supreme Court held, however, that a creditor would not be bound by such a promise. The Court stated that by promising to make timely

payments, a debtor merely "agreed to do something that he was legally bound to do." *Id.* at 187, 26 S.E.2d at 502. Consequently, there was no consideration for the creditor's promise to forbear, *id.* at 189, 26 S.E.2d at 503, and the creditor was free to insist upon the terms of the note.

Similarly, in *Marion Production Credit Ass'n v. Smith,* 221 S.C. 172, 69 S.E.2d 705 (1952), the debtor attempted to avoid the creditor's acceleration of a note by claiming that the creditor had agreed to permit him to extend the time of payment. Again, the South Carolina Supreme Court held that a debtor cannot prevent its creditor from insisting upon full payment after default, emphasizing that a debtor does not provide sufficient consideration to make the creditor's promise enforceable merely by agreeing to do that which he is already legally bound to do. *Id.* at 174, 69 S.E.2d at 706.

Most recently, in *Castell v. Stephenson Finance Co.,* 244 S.C. 45, 135 S.E.2d 311 (1964), the South Carolina Supreme Court rebuffed a debtor's attempt to avoid the consequences of his default by pointing to the creditor's alleged promise to forego acceleration. For a third time, the Court emphasized that a debtor's promise to make payments under a note is not sufficient consideration to prevent its creditor from retracting an agreement to forbear and insisting upon the right to accelerate after a default. *Id.* at 54, 135 S.E.2d at 315. *See also FDIC v. Waldron,* 630 F.2d 239 (4th Cir.1980) (under South Carolina law, a renewal note is not adequate consideration for agreement to modify the debt); *Knotts v. Virginia-Carolina Chemical Co.,* 204 F. 926 (4th Cir.1913) (debtor cannot enforce creditor's promise to forbear from acceleration which is based upon the debtor's promise merely to make payments he is already bound to make).

The debtor's and Mulberry's assertions are much weaker than those put forward by the debtors in *Rabon, Marion* and *Castell,* all of whom were denied relief by the South Carolina Supreme Court. Here, the bank made no representation or promise that it would refrain from acceleration and fore-

closure; but even if it had, under the authority of the foregoing decisions, such a promise would not protect Mulberry.

■ The bank had no obligation to accept partial payment or to permit reinstatement. Furthermore, the bank has not waived its right to immediate payment in full and is not estopped from asserting its rights under the note. In *Central Production Credit Ass'n v. Page,* 268 S.C. 1, 231 S.E.2d 210 (1977), the South Carolina Supreme Court explained that a debtor cannot use a creditor's actions to equitably estop it from enforcing its rights under a mortgage unless, among other things, the debtor (1) lacked knowledge and the means of knowledge of the truth as to the facts in question; (2) relied upon the creditor's conduct; *and* (3) took action that changed his position prejudicially. *Id.* at 9, 231 S.E.2d at 214. Here, Mulberry (1) by the February 23 letter was made aware of the bank's decision to accelerate the note; (2) was limited by time for substantial reliance upon the March computer notice because the bank returned the check immediately; and (3) had almost no opportunity to change its position prejudicially because of prompt return of the check. *See also* 59 C.J.S., *Mortgages* § 459(6)(c), p. 800 (1949) (subsequent demand by mortgagee for performance in whole or part is not a waiver of previously declared acceleration); *id.* at p. 798 (right to accelerate is not waived without intent to waive); *id.* at § 501, p. 804 (waiver of right to foreclose may not arise from an unaccepted offer of payment).

■ 3. The state court foreclosure action, filed by the bank against the non-debtor co-obligor (Mulberry) and the guarantors (Elmer Selmon, Edith J. Myers and George C. Myers), should be remanded to the Court of Common Pleas. *In re Calabria,* 5 B.R. 73 (Bkrtcy.D.Conn.1980), held that the ends of justice dictated that the basic mortgage foreclosure action be remanded to the state court, with the bankruptcy court retaining jurisdiction to determine the debtor's entitlement to exemptions and its right to avoid a judicial lien on the property. The court stated,

This court is quite convinced that the state court is far more able to conduct the action to foreclose the mortgage under the provisions of controlling state law than is this Bankruptcy Court.

*Id.* at 75.

■ 4. This court should not enjoin the bank from prosecuting the state court foreclosure/deficiency action against the non-debtor co-obligor (Mulberry) and the guarantors (Elmer Selmon, Edith J. Myers and George C. Myers). Even prior to the United States Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), it was questionable whether the bankruptcy court had jurisdiction to enjoin actions against non-debtor co-obligators/guarantors. Comparing the pre-October 1, 1979 law which existed under the old Bankruptcy Act with 28 U.S.C. § 1471 of the Reform Act, the principal commentator in the field stated:

> The power of the bankruptcy court to enjoin litigation which seeks to obtain a judgment against the estate or to interfere with property of the debtor has been long recognized. However, *where the litigation is directed against* a subsidiary or affiliate of the debtor or against *a guarantor or other third party liable upon the debts of the debtor, courts have rarely acted to issue injunctions,* on the ground that they lack jurisdiction to do so, *a view that should remain unchanged.*

(Emphasis supplied). 2 *Collier On Bankruptcy* ¶ 362.04 at pp. 362–28, 362–29 (15th ed. 1979). See also *McGinnis Lumber Co. v. Belser,* 385 F.Supp. 390 (D.S.C.1974).

The debtor is not a party to the state court foreclosure action, and has no property interest in the reversion fee on which the bank seeks to foreclose. The debtor is merely Mulberry's tenant; the debtor's leasehold interest will not be disturbed by the foreclosure action. If the bank is successful in the foreclosure action, it is prevented by the automatic stay of § 362 of the Bankruptcy Code (11 U.S.C. § 362) from taking any action to dispossess, eject or otherwise disturb the possessory interest of the debtor under its lease. The bank must come back to this court and obtain relief from the automatic stay before taking such action.

■ Under both the old Bankruptcy Act and the new Bankruptcy Code, it is recognized that bankruptcy courts should not interfere with state court actions where, as in this case, the dispute does not involve the debtor or his property. Although the wording and breadth of the old Act and new Code are different, analyses made under the old Act may apply with equal effect under the new Code. In *Callaway v. Benton,* 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949), the debtor held a leasehold interest in certain railroad tracks owned by South Western. South Western's management had approved sale of the tracks to the debtor, but certain of South Western's stockholders brought an action against their company in state court, seeking to enjoin the sale. The debtor requested that the bankruptcy court stay the state court action so that the sale could be closed, claiming that reorganization would be impossible without consummation of the sale. The Supreme Court held that § 77 of the Bankruptcy Act gave

> exclusive jurisdiction of the debtor and its property wherever located. § 77, sub. a. The interest held by the debtor in South Western's lines was a leasehold estate. Such an estate is the debtor's "property" within the meaning of the Act. Any controversy involving that estate would have been within the exclusive jurisdiction of the bankruptcy court.
>
> *Here, however, the question involves not the debtor's leasehold, but the reversion in fee held by South Western as lessor.* South Western was not in reorganization jointly with its lessee, nor could it have been reorganized in the Central's proceedings. The controversy which respondents initiated in the state court, and which the district court decided after having enjoined the state proceedings, requires a determination of the rights of the stockholders of South Western *inter se* to sell their reversionary interest in the

property. *We think that the interest here involved is not part of the property of the debtor,* and that the district court's assertion of exclusive jurisdiction was error.

*Id.* at 142–43, 69 S.Ct. at 442 (emphasis added).

Regardless of changes the Bankruptcy Code may have made in the breadth of this Court's jurisdiction, the Supreme Court's analysis in *Callaway* regarding the effect, if any, of a state court proceeding on the debtor's "property rights" in a leasehold estate remains correct. The instant state court action involves the reversion in fee, not the debtor's leasehold estate. Even though both debtor and Mulberry have separate estates in the same parcel of real property, only Mulberry's estate is subject to the state court action. The debtor's property right in the real property is unaffected.

Following this same reasoning, many bankruptcy courts have held that, under the Bankruptcy Code, they should not intervene in controversies between third parties that do not involve the debtor or his property.

For example, in *In re Lunsford,* 12 B.R. 762 (Bkrtcy.M.D.Ala.1981), the bankruptcy court refused to intervene in a dispute between the debtor's landlord and a third party over a sum of money paid by the debtor to the landlord. The court advised that the "jurisdictional provisions [of the new Code] do not extend to any and every conceivable matter which might arise relating to a bankrupt, his rights or his property interest."

In a similar case, the plaintiff sought to bring suit against several nondebtor defendants in the bankruptcy court, claiming that the defendants had used the debtor corporation as their alter ego. The bankruptcy court refused to accept jurisdiction over the plaintiff's action, noting that the plaintiff did not seek recovery from the assets of the debtor corporation and concluding that 28 U.S.C. § 1471 did not provide a basis for the plaintiff to bring his claim in the bankruptcy court. *In re Bottles,* 20 B.R. 947 (Bkrtcy.C.D.Ill.1982). See

also *In re Curtina International,* 15 B.R. 993 (Bkrtcy.S.D.N.Y.1981); *In re Universal Profile, Inc.,* 6 B.R. 190 (Bkrtcy.N.D.Ga.1980) (noting that bankruptcy courts have accepted jurisdiction where the debtor, assets of the debtor's estate, or a claim of the debtor was involved, but refused jurisdiction over a claim that involved none of these).

█ 5. Even if it were assumed that this Court had jurisdiction, 11 U.S.C. § 362 does not provide a statutory basis for granting an injunction against litigation involving non-debtor third parties. A careful reading of Section 362 reveals that it only applies to the debtor and its property. The only co-debtor stay found anywhere in the Bankruptcy Code is Section 1301 (11 U.S.C. § 1301), and it only applies to Chapter 13 cases. Even the Section 1301 co-debtor stay does not stay actions against third parties in a business/commercial setting. Section 362 provides no stay of actions against third parties and their property. *Royal Truck & Trailer v. Armadora, et al.,* 10 B.R. 488 (D.C.N.D.Ill.1981); *In re Smith,* 14 B.R. 956 (Bkrtcy.D.Conn.1981); *In re Fintel,* 10 B.R. 50 (Bkrtcy.D.Or.1981); *In re Harvey Cole Co.,* 2 B.R. 517 (Bkrtcy.W.D.Wash.1980).

6. Notwithstanding the foregoing, and assuming jurisdiction and some statutory basis under which it can act, the Court finds that it should not enjoin the bank from prosecuting its state court foreclosure/deficiency action against the non-debtor co-obligor and guarantors. If the bank were enjoined/stayed and the debtor had a Chapter 11 plan of reorganization confirmed and obtained a discharge, the bank could proceed against the third parties and their property to collect the full amount of its debt. Under Section 16 (11 U.S.C. § 34) of the Bankruptcy Act and under Section 524(e) (11 U.S.C. § 524(e)) of the Bankruptcy Code the discharge of a debt of the debtor neither affects nor alters the liability of any other entity (third party co-debtor and guarantors) on, or the property of any other entity for, such debt. See *R.I.D.C. Indus. Development Fund v. Snyder,* 539 F.2d 487 (5th Cir.1976) *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977);

*Matter of Stanndco Developers, Inc.,* 534 F.2d 1050 (2nd Cir.1976); *In re General Steel Tank Company,* 478 F.2d 294 (4th Cir.1973); *In re Fintel,* 10 B.R. 50 (Bkrtcy. D.Or.1981); *Dominion Culbert & M. Corp. v. United States F. & G. Co.,* 238 S.C. 452, 120 S.E.2d 518 (1961).

Therefore, unless the debtor were to obtain a confirmed Chapter 11 plan which paid the bank one hundred cents on the dollar in cash at consummation (an amount which presently exceeds $250,000.00 and is increasing each day with accruing interest, fees and other expenses), ultimately, after the termination of the bankruptcy proceedings, the bank would be entitled to pursue its foreclosure and deficiency action against the third parties and, after recovery, these parties would be subrogated to the rights of the bank against the debtor. See Section 509(a) (11 U.S.C. § 509(a)) of the Bankruptcy Code and *In re Smith,* 14 B.R. 956 (Bkrtcy.D.Conn.1981). With respect to the bank's proof of claim filed against the debtor, the proposed plan filed by the debtor on June 24, 1982 offers to pay the bank only fifteen cents on the dollar, stretched over five years, without interest.

A number of bankruptcy courts have abstained in cases similar to the instant one, where neither a claim involving the debtor nor a claim involving the debtor's property is involved. *See, e.g., In re Bernd,* 20 B.R. 338 (Bkrtcy.E.D.Wis.1982); *In re Haug,* 19 B.R. 223, 6 C.B.C.2d 479 (Bkrtcy.D.Or.1982) (emphasizing "the liberal abstention authority granted in [28 § 1471(d) ]"); *In re Chong,* 12 B.R. 255 (Bkrtcy.D.Haw.1981) (noting that the case did not involve the debtor or the property of the estate).

■ Because neither the debtor nor its property right (a leasehold interest) is a subject of the foreclosure action, this case is one in which the bankruptcy court should abstain.

9. Enjoining the bank from proceeding against the non-debtor third parties would allow them to use the Bankruptcy Court and its power as a shield for postponing their legal obligations, a purpose never intended by the Code or Congress. The three

(3) guarantors were the sole shareholders of the debtor at the time of the commencement of this case, and they still own more than eighty percent of the debtor. They are also the sole shareholders of the co-obligor Mulberry. The guarantors who comprise the board of directors of the debtor are also the sole directors of Mulberry; they are the only officers of both the debtor and Mulberry. In short, these guarantors are insiders of both the debtor and Mulberry, control both corporate entities and are the ultimate beneficiaries of substantially all of any equity values which exist in these entities.

Mulberry and the guarantors may obtain an automatic stay/injunction against the bank foreclosure/deficiency action by filing for relief under the Bankruptcy Code. 11 U.S.C. § 362. They will not be permitted to avoid or delay their obligations to the bank by utilizing the automatic stay afforded the debtor.

> It would be inappropriate, as a matter of discretion, to enjoin the Board (Bank) . . . (from proceeding) against the surety (co-obligor/guarantors) until the distribution of the bankruptcy estate . . . The purpose of the bond (co-obligor, guaranty, third-party real estate mortgage) . . . is to protect the intended beneficiaries (Bank) if the contractor (Debtor) fails to perform his duty for any reason including bankruptcy . . . . The *Debtor cannot use his* (its) *bankruptcy to hold the bond* (guaranty and real estate collateral of third parties) *as hostage for a fresh start.*

(Emphasis and parentheticals supplied). *In re Fintel,* 10 B.R. at 52. Another court has stated:

> *The purpose of a guaranty is to provide* a source of alternative assets to the extent the bankrupt or debtor has none. *The creditor* thus has a *right, unaffected by bankruptcy, to turn to the guarantor for satisfaction of a debt.*

(Emphasis supplied). *In re Harvey Cole, Co., Inc.,* 2 B.R. at 520.

Parties to a state court proceeding who are not in bankruptcy should not use the

automatic stay accorded the Debtor as a shield behind which to hide. *In re Cloud Nine, Ltd.,* 3 B.R. 202, 5 B.C.D. 1377 (Bkrtcy.D.N.M.1980). In short, even if this Court has jurisdiction and a statutory basis under which to grant the requested injunctive relief, it is not a wise use of its judicial discretion to do so. This Court, therefore, pursuant to 28 U.S.C. § 1471(d), should abstain from granting the injunction requested. For the same reasons, pursuant to 28 U.S.C. § 1478(b), the Court in the exercise of its equitable discretion concludes that the State Court proceeding should be remanded.

10. Furthermore, the relief sought here is equitable in nature, i.e., an injunction. It is fundamental that one who seeks equity must do equity and must come before this Court with clean hands. As demonstrated by this Court's findings of fact in numbered 2–4 above, the debtor is not entitled to the equitable relief sought.

11. In this reorganization case under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.), this court, in harmonizing the interest of the debtor in rehabilitating its business with the rights of the bank to satisfy obligations owed to it by third parties not in bankruptcy, believes that such harmony is accorded the bank by allowing the bank to proceed with its state court foreclosure and deficiency action against the third parties who are not in bankruptcy and against the real estate which is owned by Mulberry, while, at the same time, allowing the debtor to retain its leasehold interest in such real estate, to operate its business thereon and to attempt to rehabilitate its business. If the bank is successful in its foreclosure action and its debt obligations are not satisfied by the guarantors, then it may seek relief in this court from the automatic stay so as to dispossess, evict or otherwise interfere with the only interest which this debtor has in The Premises, to wit, a possessory interest arising out of its lease with Mulberry. Such approach by the court should accommodate the interest of all parties, contribute to sound judicial administration in both the bankruptcy and state court and harmonize the legal rights of all concerned.

12. As to the Removal Petition and Motion to Remand of the State Court foreclosure proceedings, this Court concludes that this action was improvidently removed and should be remanded.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That the relief prayed for in debtor's Complaint to stay and reinstate, Adversary Complaint No. 82–0543, should be and is hereby denied and the case dismissed.

2. That the action, Adversary Proceeding No. 82–0569, The Citizens and Southern National Bank of South Carolina against Mulberry Corporation, et al. should be and hereby is remanded to the Court of Common Pleas for Greenville County, South Carolina.