**In re Mary Jo MARRS, Debtor,**

**Frankie Jean BAXTER, Plaintiff,**

v.

**UNITED SOUTHERN BANK and Mary Jo Marrs, Defendants.**

Bankruptcy No. 381–02321.
Adv. No. 382–0488.

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 9, 1983.

William R. O'Bryan, Jr., Trabue, Sturdivant & DeWitt, Nashville, Tenn., for Federal Deposit Ins. Corp., Liquidator for United Southern Bank of Nashville.

William Bracken Ingram, Ingram & Jones, Nashville, Tenn., for Frankie Jean Baxter.

Richard Eason, Legal Clinic of Bart Durham, Nashville, Tenn., for Mary Jo Marrs.

### MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether a bankruptcy court should abstain from addressing the nondebtor plaintiff's complaint for a declaratory judgment and the nondebtor defendant's counterclaim for conversion and trespass after all matters involving the debtor have been dismissed. After a review of applicable authority, the court, on its own motion,[1] finds that where the controversy affects neither the debtor nor the administration of the debtor's estate, involves complex issues of state law, and where jurisdictional uncertainty exposes a bankruptcy court judgment to future collateral attack, resolution of the conflict is not in the interest of

---

1. It is well-settled that a court may raise the abstention issue *sua sponte*. *See, e.g., Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976).

justice or the parties and the court should ABSTAIN.

The following constitute findings of fact and conclusions of law as required by Rule 7052 of the Bankruptcy Rules.

On February 21, 1979, Mary Jo Marrs ("Marrs") obtained a $3,700 installment loan secured by a Savin 755 copying machine from United Southern Bank of Nashville. On June 6, 1979 Marrs borrowed an additional $9,500 secured by a 1979 Ford automobile. On August 1, 1979, Marrs borrowed another $2,000 from United Southern Bank secured by an unspecified "continuing guaranty agreement."[2] The security agreements covering these loans were properly perfected, contained standard "subsequent advances" and "dragnet clauses," and prohibited sale or other disposition of any collateral without the prior written approval of United Southern Bank.

By handwritten agreement dated November 17, 1980, Frankie Jean Baxter ("Baxter") purchased several pieces of office equipment from Marrs and assumed the loan on the copier. Baxter timely paid all required installments directly to United Southern Bank. Conflicting testimony was presented at trial regarding whether United Southern Bank was informed of Baxter's loan assumption and whether a bank officer orally approved of the action. It is undisputed, however, that Baxter never received written approval to assume the loan.

On September 11, 1981, Marrs filed for relief under Chapter 7. Marrs scheduled United Southern Bank as a secured creditor with regard to the automobile loan, but did not schedule the obligation on the copier assumed by Baxter. On March 2, 1982, the installment payments on the copier were completed by Baxter and the note was stamped "PAID" and returned to Marrs. In April of 1982, however, United Southern Bank notified Baxter of its intention to repossess the copying machine pursuant to the "dragnet clause" in the security agreements executed by Marrs.

On July 22, 1982, Baxter filed a complaint to revoke Marrs' discharge and to reopen her bankruptcy case. Baxter alleged that Marrs' failure to disclose the outstanding lien on the copier constituted fraud within the parameters of 11 U.S.C.A. § 523(a)(2) (West 1979). Baxter also instituted a declaratory judgment action against United Southern Bank to ascertain ownership of the copier. On May 27, 1983, United Southern Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") succeeded to the bank's rights and obligations and was substituted as a party defendant herein. On August 31, 1983, the FDIC filed an amended answer and a counterclaim alleging conversion and trespass against Baxter. A trial was held September 9, 1983.

At the close of proof, Baxter's attorney conceded that the elements necessary to support a claim for nondischargeability against Marrs were absent and made an oral motion to dismiss that part of the complaint. The motion was granted. The remaining issues—Baxter's declaratory judgment action and the FDIC's counterclaim for conversion and trespass—are unrelated to the bankruptcy proceeding and do not affect either the debtor or the debtor's property.

 The court finds that it would be in the interest of justice to abstain from resolving the remaining issues. Abstention is the exception and not the rule. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Abstention is discretionary and should be determined by examining the circumstances of each case. *See, e.g., Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965); *Palmer v. Columbia Gas of Ohio, Inc.,* 479 F.2d 153, 170 (6th Cir.1973); *In re Southern Distilleries,* 22 B.R. 234, 235 (Bkrtcy.M.D.Ala.1982). Abstention in bankruptcy matters is governed by 28 U.S.

---

**2.** Marrs had previously borrowed $10,000 in unsecured funds from United Southern Bank and had an outstanding balance when the subsequent loans were made.

C.A. § 1471(d) (West Supp.1982) [3] which provides:

> Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, *in the interest of justice,* from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention ... is not reviewable by appeal or otherwise. (emphasis added).

Retention of this proceeding would not be in the best interest of justice or the parties. The remainder of this case involves questions of state law between parties unrelated to the bankruptcy proceeding. In the absence of very special circumstances or obvious prejudice, the bankruptcy court should abstain from resolving controversies which do not involve the property or administration of a debtor's estate, and where another court provides a more suitable forum. *See S.F. Shopping News, Inc. v. Palmer Construction Co.,* 7 B.R. 232, 233 (Bkrtcy.D.S.D. 1980).[4] *See also Scientific Computers, Inc. v. Neuromedics, Inc.,* 20 B.R. 410, 411 (Bkrtcy.D.Minn.1982) (action for breach of contract in which debtor is not a party and which does not deal with property of the debtor's estate lies in the outer limits of bankruptcy court jurisdiction and the court in the proper management of its judicial business has an obligation to abstain); *Energy Shed, Inc. v. Cardanas (In re Bernd),* 20 B.R. 338, 342 (Bkrtcy.E.D.Wis.1982) (abstention is proper in a proceeding in which a creditor merely requested declaratory judgment that its security interest was superior to security interest of second creditor and trustee, where the outcome does not impact assets of the debtor's estate and the issues could be resolved by other courts).

The controversy remaining in this case involves the resolution of state law questions and conflicting applications of law and equity. The interrelationships among the torts of conversion and trespass, the Tennessee Commercial Code and principles of equity are at issue. These are matters particularly within the competence of other courts to decide.

Finally, the interest of justice dictates that this court abstain to avoid the prejudice that would result from a subsequent successful collateral attack upon this court's judgment. In the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), this court is possessed of questionable jurisdiction to adjudicate the purely state law matters involved in this proceeding. Although this case is arguably within the bankruptcy court's authority to resolve "related matters" through a proposed judgment under the district court's emergency local rule, the validity of the stop-gap system created by the district court's emergency local rule has come under considerable attack and is of dubious constitutional validity. *See, e.g., In re South Portland Marine Shipyard and Marine Railways Corp.,* 32 B.R. 1012, 10 B.C.D. (CRR) 1385 (D.C.D.Me.1983); *In re Seven Springs Apartments Development,* 33 B.R. 458, 10 B.C.D. (CRR) 634 (Bkrtcy.N.D.Ga.1983). Until the Supreme Court resolves the constitutional uncertainty surrounding the emergency local rule or Congress acts to cure the constitutional infirmities inherent in an Article I bankruptcy court, the court is obligated to abstain from resolving issues that inhabit the outer reaches of this court's post-*Northern Pipeline* jurisdiction.[5]

---

**3.** 11 U.S.C.A. § 305(a) (West 1979) also provides authority for abstention in bankruptcy matters.

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

**4.** Some courts faced with a proceeding unrelated to the debtor or the debtor's estate have dismissed the proceeding for lack of subject matter jurisdiction. *See Hall v. Jet Television Rental, Inc.,* 30 B.R. 799 (D.C.M.D.Tenn.1983); *In re Curtina Int'l.,* 15 B.R. 993 (Bkrtcy.S.D.N.Y.1981); *Maddox v. United States (In re Lunsford),* 12 B.R. 762, 764 (Bkrtcy.M.D.Ala.1981).

**5.** The parties will not be prejudiced by abstention in this cause because Baxter has an adequate forum in the state court system and the

Accordingly, the court will abstain from resolving the remaining issues raised in this proceeding.

An appropriate order will be entered.

FDIC has an adequate forum to adjudicate the matters raised by its counterclaim in either the

state or federal courts.