# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 6, 2011 Session

## BRIAN DOUGLAS SPIVEY v. DAVID N. KING ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-441-10      Dale C. Workman, Judge**

---

### No. E2011-01114-COA-R3-CV-FILED-FEBRUARY 2, 2012

---

The plaintiff Brian Douglas Spivey ("the Plaintiff") alleges that the defendants, his former business partners, David N. King and Anthony G. Brown (collectively "the Defendants'), engaged in a conspiracy,  and, pursuant to that conspiracy, took actions that include forcing him into bankruptcy and harassing him in the bankruptcy case, expelling him from a business entity, defaming him, and initiating unwarranted criminal charges that were dismissed.  The Defendants filed a motion to dismiss asserting that this was simply an attempt to relitigate issues that had been determined in the Plaintiff's bankruptcy and in a chancery court case the Defendants had pursued.  They also filed a motion for sanctions.  It turns out that the bankruptcy court did not issue its opinion until after the complaint in this case was filed and that the chancery court action was stayed as to the Plaintiff as a result of his bankruptcy filing.  The trial court dismissed the complaint in an order that states that the dismissal was for "failure to state a claim."  The trial court also awarded sanctions against the Plaintiff and his attorney.  The Plaintiff appeals.  We affirm that part of the judgment dismissing the claims related to forcing the Plaintiff into bankruptcy and harassing him in bankruptcy as well as the claims related to expelling him from the business entity.  We vacate that part of the judgment dismissing claims related to defamation and the allegedly unwarranted criminal prosecution.  We also vacate that part of the judgment sanctioning the Plaintiff and his attorney.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part and Vacated in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

R. D. Hash, Maryville, Tennessee, for the appellant, Brian Douglas Spivey.

Glenna W. Overton, Knoxville, Tennessee, for the appellees, David N. King and Anthony G. Brown.

**OPINION**

I.

This is an action filed on September 1, 2010, by the Plaintiff against the Defendants. The Plaintiff alleges that he and the Defendants formed a business entity called Brown, King, Spivey Group, LLC ("BKS LLC" or "the LLC") in November of 2006. The Plaintiff was initially appointed as the managing member of the LLC and then relieved later of that position approximately one year after the LLC's formation. Within a short time he was also expelled as a member of the LLC.

The Plaintiff alleges that the Defendants engaged in a civil conspiracy to destroy him financially and personally. Their actions pursuant to the conspiracy allegedly constituted or included, among other things, malicious prosecution, false imprisonment, abuse of process, defamation, wrongful expulsion from the LLC, and forcing him into bankruptcy.

The Plaintiff alleges that the Defendants caused him to be arrested, booked, and fingerprinted on false charges of felony forgery and misdemeanor theft. The Plaintiff alleges that the forgery charge was dismissed by nolle prosequi before the preliminary hearing and that the theft charge was dismissed due to expiration of the statute of limitations. The Plaintiff alleges that the warrants were processed only because of the "dogged determination and insistence of the . . . Defendants and their counsel." The Plaintiff claims there was an "unabated personal barrage of pleas" to the district attorney general by the Defendants and their attorney and that they supplied hundreds of pages of documents, made numerous personal visits, and made numerous phone calls pursuing a vigorous prosecution of the charges.

The criminal charges relate to an insurance check written by State Farm Insurance to payees, the Plaintiff, defendant King and First Tennessee Bank. The check was in the amount of $16,681.32 for a casualty loss related to a theft at a house under construction by the LLC and The Spivey Group, Inc., the general contractor for a development undertaken by the LLC. Spivey Group is partially owned by the Plaintiff. The Plaintiff deposited the check into the account of Spivey Group at First Tennessee Bank. According to the allegations in the complaint, the insurance company mistakenly placed Mr. King's name on the check. The Plaintiff alleges that he deposited the funds in the account of The Spivey Group, Inc. and used them for the benefit of the LLC.

The Plaintiff makes several allegations concerning the motivation behind the criminal prosecution. He says the theft charge is nonsense because it was allegedly based on depositing the check without King's endorsement but King knew he was never personally entitled to the funds. He says also that he acted on the advice of First Tennessee Bank, a co-payee on the check. The Plaintiff also alleges that if King really believed that a forgery had occurred, he could have simply presented the facts to First Tennessee Bank and it would have been obligated to pay King the face amount of the check.

The Plaintiff alleges the Defendants wrongfully forced him into bankruptcy by resisting, with lies, his request for a continuance of a trial. The trial to which he refers is in a case filed by the Defendants against him and others in Knox County Chancery Court. He alleges that the Defendants defeated his request for a continuance with the falsehood that their lender, First Tennessee Bank, was in the process of foreclosing against them on loans they guaranteed for BKS LLC. The Plaintiff alleges that First Tennessee was "never even close to foreclosure." The Plaintiff filed a chapter 7 bankruptcy petition on the day before a trial was scheduled in chancery court. The lawsuit was stayed as to claims asserted against the Plaintiff personally, but the Defendants secured a judgment by default against The Spivey Group, Inc. in the amount of $441,482. The Spivey Group, Inc. is one of the assets the Plaintiff listed in his bankruptcy petition. The Plaintiff alleges that the amount of the default judgment was grossly inflated by false testimony.

The Plaintiff alleges that the Defendants

> have continued their civil conspiracy to destroy [him] by continuing their pattern of willful and wanton harassment in the United States Bankruptcy Court. Instead of respecting [the Plaintiff's] federal right to discharge any obligations to [the Defendants] in a no or limited asset bankruptcy . . . they next alleged in the Bankruptcy Court [that the Plaintiff] was not entitled to discharge certain indebtedness . . . which indebtedness was based upon the exact same misrepresentations and incomplete data they used to obtain the Default Judgment in Chancery Court. . . .
>
> . . . [The Defendants], in a continued concerted effort to harass [the Plaintiff], with dogged determination, filed a Complaint in the United States Bankruptcy Court, thereby objecting to [the Plaintiff's] discharge of certain indebtedness to them, on the exact same incomplete, flawed and misleading facts they

presented to the Chancellor and obtained Default Judgment in the Knox County Chancery Court.

The Plaintiff also alleges that the Defendants, in furtherance of their conspiracy, have made false, defamatory statements to others, including his banker, his insurance agent, his vendors, and his subcontractors. His complaint alleges numerous forms of damages including the expense of defending the malicious criminal charges, loss of assets, and damage to his credit. His complaint demands compensatory damages of $5,000,000 and punitive damages of $5,000,000. The only attachments to the complaint are the two criminal warrants.

Approximately one month after the complaint was filed, the Defendants filed their "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted." The motion does not allege that either the bankruptcy case or the chancery court case somehow bars the present case. In fact, the motion expressly states that "the Bankruptcy court has not rendered an opinion." The motion contains the strange statement that "[a] motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment." Other than the assertion that "there was no conspiracy between the Defendants and their counsel," and some descriptive criticism of the litigation strategy of the Plaintiff in both bankruptcy and chancery court, the thrust of the motion is found in the statement, "[t]hrough pleadings, transcripts and affidavits, Defendants will show to this Court that it is the Plaintiff that has filed this lawsuit for purposes of harassment."

The same day the Defendants filed their motion to dismiss, they filed a motion for extension of time to answer some pending request for admissions. They argued that their pending motion to dismiss rendered the request moot.

Strangely enough, even though they had not filed a motion for summary judgment, or even asserted in their motion to dismiss that they were entitled to judgment as a matter of law for lack of an issue of material fact, the Defendants filed a "Statement of Undisputed Facts" along with several exhibits. The exhibits include (1) a copy of the chancery court complaint; (2) a copy of the Plaintiff's bankruptcy petition; (3) a three-page excerpt taken from the Plaintiff's deposition in the chancery court case in which he testified that the insurance check was deposited into the LLC's account; (4) the affidavit of Mr. Brown in which he denied making defamatory statements but admitted making derogatory statements that were true; (5) the affidavit of King in which he (a) asserted that his name was forged on the check and denied giving the Plaintiff permission to sign his name, and (b) denied making defamatory statements about the Plaintiff but admitted making derogatory statements that were true; (6) excerpts of the testimony of several witnesses in the bankruptcy case; and (7) the affidavit of attorney Overton, the Defendants' counsel, asserting (a) that she had only one telephone

-4-

call and one personal meeting with the state prosecutor in the criminal cases, (b) that she had one telephone conversation with the Plaintiff's banker, (c) that she had not talked to others as alleged in the complaint, and (d) that the bankruptcy court had not issued an opinion.

Shortly after filing their Statement of Undisputed Facts, the Defendants filed a motion for sanctions. They asserted that the "Complaint has no merit and was filed for the purposes of harassment."

The Plaintiff responded to the Defendants' motion for extension of time with the assertion that the motion to dismiss "is actually a MOTION FOR SUMMARY JUDGMENT in that it relies upon information outside the pleadings." (Capitalization in original.) The plaintiff asserted that the Defendants should be required to respond to the pending request to admit and that the Plaintiff intended to take the depositions of the parties and other key witnesses.

On October 8, 2010, the Defendants filed an amended motion to dismiss in which they asserted that

> [o]n October 7, 2010, the Bankruptcy Court issued an Opinion awarding the [Defendants] . . . a judgment against [the Plaintiff] in the amount of $344,604.29 and the judgment was not dischargeable. The Bankruptcy Court found that [the Plaintiff]
>
>> . . . misappropriated large sums of BKS LLC funds, presumably for other projects and admittedly for his personal use, both without the authorization or knowledge of the [Defendants]. By using BKS LLC funds for projects other than BKS LLC projects, the [Plaintiff] acted knowingly and fraudulently, and the [Defendants] are entitled to a nondischargeable judgment against him for the amounts misappropriated from BKS LLC.
>
> The Opinion from the Bankruptcy Court is further indication that the Plaintiff has filed a Complaint which is without merit. . . .

The motion attached, as an exhibit, a full copy of the judgment and memorandum opinion of the bankruptcy court.

The Plaintiff then filed an "Interim Response to Defendant's Motion to Dismiss and Amended Motion to Dismiss" which reiterated his position that the motion to dismiss must be treated as a motion for summary judgment and asserted that he had filed a motion for new trial in the bankruptcy court. He asked the court for time to conduct discovery and to prosecute the motion for new trial. The motion for new trial filed in the bankruptcy case and brief in support were filed as attachments to the "interim" response.

The Plaintiff also filed an "interim" response to the motion for sanctions. He asked that the motion be continued until the completion of the case when "all the facts and evidence are before the court."

On or about November 5, 2010, the Plaintiff filed in this action a "Notice" that the affidavits of the Defendants contained false testimony. The Plaintiff attached numerous exhibits that purported to show the Defendants testified falsely that they did not learn the Plaintiff had deposited the insurance check in the wrong account until certain disclosures were made in bankruptcy; the Plaintiff testified in his second deposition in the chancery court case that the check was deposited into the account of The Spivey Group, Inc.

On January 24, 2011, the Plaintiff filed a "supplemented interim response" to the motion to dismiss. In narrative form it purports to show (1) the Defendants conspired not to pay his company, The Spivey Group, Inc., a 10% builder's fee that they had previously agreed upon; (2) the Defendants "made false and defamatory statements about [the Plaintiff] to First Tennessee Bank Officials, John Verdeaux, the Board for Licensing Contractors, . . . various sub-contractors including Ron Kidd, and others;" (3) the expulsion of the Plaintiff as a member and as the managing member was done in meetings held without proper notice; (4) the Defendants testified falsely in the chancery court case, and elsewhere, "about the 10% builders fee, the status of the homes [under construction], the status of the financials, and more"; (5) the Defendants submitted false and incomplete information to the authorities prosecuting the criminal charges. The Plaintiff specifically charges that the Defendants "did not disclose that the check was mailed to Spivey at Spivey's home and business address, that Spivey and King had an 88 minute phone conversation on the day that Spivey received the check where King gave Spivey permission to endorse the check, and that the charge for theft was past the one year statute of limitations." The Plaintiff specifically asserts that he

> should be allowed proper time for discovery which will prove that Brown and King did not make completely truthful statements to the detective which were presented by King and Brown to the magistrate to pursue Spivey's false arrest and false imprisonment, all as part of their malicious prosecution, abuse of process, and civil conspiracy.

(Capitalization in original omitted).

In support of his supplemented interim response, the Plaintiff filed several affidavits, including his own affidavit of 26 narrative pages. The Plaintiff's affidavit directly asserts that the Defendants and persons acting on their behalf submitted incomplete information to the criminal investigators and others involved in the criminal prosecution. The affidavit also indicated persons to whom the Defendants made false and defamatory statements, including the Plaintiff's banker and a subcontractor named Ron Kidd, to whom the Defendants had "bragged" about what they had done to the Plaintiff. The Plaintiff also filed numerous attachments to the affidavits, including photographs of the houses under construction.

On January 2, 2011, the Defendants supplemented their motion to dismiss with a copy of the order denying the motion for new trial in bankruptcy court. They asserted that the affidavits the Plaintiff filed constitute a further attempt "to relitigate issues that were already tried."

On March 1, 2011, the trial court entered an order in the present case which states, in its entirety as follows:

> The Defendants filed a Motion to Disqualify Plaintiff's Counsel; Motion to Dismiss for Failure to State a Claim, Motion for Rule 11 Sanctions and Motion for Extension of Time to Respond to Request for Admissions. On December 9, 2010 the Defendants' motions came to be heard before the honorable Judge Dale Workman. During argument, it was announced to the Court that the Plaintiff in this case had filed a Motion for a New Trial in the adversary proceeding in the Bankruptcy Court. The adversary proceeding contained allegations that were also raised in this Circuit Court action.
>
> The Court denied the Defendants' Motion to Disqualify Counsel. The Court continued the remaining motions until after the Bankruptcy Court ruled upon the Motion for a New Trial.
>
> On January 28, 2011, the remaining motions came to be heard before the honorable Judge Dale Workman. It was announced to the Court that the Bankruptcy Court denied this Plaintiff's Motion for a new trial. Upon hearing the argument by counsel, the Court granted Defendants' Motion to Dismiss for Failure to State a Claim. The Court also granted the Defendants' Motion

-7-

for Rule 11 Sanctions. The Motion for Extension of Time to Respond to Request for Admissions became moot.

The Court ordered that the Defendants are to prepare a Bill of Particulars within fifteen (15) days [of] the date of this hearing. The Bill of Particulars shall state specifically what sanctions the Defendants are seeking and against whom the Defendants wish for the sanctions to be assessed. . . . The Plaintiff will have forty-five (45) days from the date that the Defendants file their Bill of Particular[s] to perform any discovery and respond. It is hereby ordered that the Bill of Particulars shall be heard on April 8, 2011 at 9:00 a.m..

On March 30, 2011, the Plaintiff filed a motion to alter or amend the order entered on March 1, 2011. The Plaintiff asserted the order was improper pursuant to Tenn. R. Civ. P 58 for lack of the approval of all counsel or the appropriate certificate of service. He also asserted that the order should have contained a ruling on his request for discovery. Further, he argued that the court should amend the order to allow him to proceed on the malicious prosecution and related claims because he could not present them in the bankruptcy court proceedings which were limited to the issue of whether a debt owed to the Defendants was dischargeable.

The Defendants filed their "Bill of Particulars." Unfortunately, the record contains only the front page of that filing. There is very little substance in that one page.

In an order entered April 19, 2011, the court denied the motion to alter or amend and

granted the Defendants' Bill of Particular[s] with respect to the attorney fees only. The Court awarded sanctions in the amount of four thousand nine hundred sixty-eight dollars ($4,968.00) against the Plaintiff. . . . The court awarded sanctions in the amount of one thousand eighteen dollars ($1,018.00) against the Plaintiff's attorney, R.D. Hash. The sanctions against attorney Hash is a portion of the sanctions awarded against Plaintiff Spivey.

II.

The Plaintiff timely filed a notice of appeal. He raises these issues:

-8-

Whether the . . . Trial Court erred in dismissing [the] Plaintiff's Complaint pursuant to the motion to dismiss for failure to state a claim upon which relief can be granted filed pursuant to [Tenn. R. Civ. P.] . . . 12.02.

Whether the . . . Trial Court erred in not treating [the Defendants'] motion to dismiss for failure to state a claim upon which relief can be granted as a motion for summary judgment.

Whether the . . . Trial Court erred in granting [the Defendants'] motion for sanctions.

Although they have not listed any new issues, the Defendants ask in their brief that we modify the award of sanctions to make counsel for the Plaintiff responsible jointly with the Plaintiff for the full amount, and award sanctions for this appeal.

III.

It appears to us that the dispositive issue in this case is whether the judgment of the bankruptcy court bars the Plaintiff's claims as a matter of law. It is upon that issue that we will endeavor to decide whether the trial court erred in dismissing the Plaintiff's claims.

Before we look at the particulars of that key issue, it is appropriate that we comment upon the briefs. We believe the essence of the first and second issues as raised and argued by the Plaintiff is the same; namely, that the trial court obviously looked outside the pleadings when it considered the judgment of the bankruptcy court, and, as a consequence, the trial court's judgment became a summary judgment rather than a dismissal for failure to state a claim. The Defendants' response appears to argue both that the trial court treated this as a motion for summary judgment and that the trial court treated the motion as a pure motion to dismiss and that whatever it did was correct. The trial court obviously stated that it was granting the motion for failure to state a claim. We agree with the Plaintiff that the court, despite what it said in its order, was bound to treat the motion as a motion for summary judgment and did, in fact, treat the motion as a motion for summary judgment.

Our agreement to this one proposition, however, takes us only one step along the path that the Plaintiff attempts to lead us. The Plaintiff wants us to conclude that the trial court's language describing the dismissal as being pursuant to Tenn. R. Civ. P. 12.02 for failure to state a claim, rather than pursuant to Tenn. R. Civ. P. 56 for summary judgment, makes the judgment wrong as a matter of law because the trial court did not allow him discovery. There are two reasons we cannot accept the Plaintiff's argument as the basis for our decision. First,

as to any claims that the bankruptcy court judgment bars as a matter of law through the doctrines of res judicata or collateral estoppel, we cannot understand how any amount of discovery would reverse the effects of those doctrines. We are not inclined to reverse the trial court and remand this case just so the case can be dismissed on remand in an order that is called something different. *See* Tenn. R. App. P. 36(b)(reversal is not required for an error that does not affect a substantial right). Second, the record before us does not support the assertions that the Plaintiff was denied discovery altogether or did not have it within his power to respond factually to any portion of the motion that went outside the pleadings.[1] Clearly the Plaintiff was on notice when the motion to dismiss was filed on or about October 4, 2010, that the court was being asked to consider matters outside the complaint. Yet the Plaintiff did not move the court to compel any discovery. Other than the few requests to admit, there is no record of any attempt to undertake discovery, such as a notice of deposition or notice of service of interrogatories. There is no order in the record before us suspending or prohibiting discovery. Thus, we are not inclined to base the outcome of this case on the label that the trial court gave its ruling. In ***Mills v. Booth***, 344 S.W.3d 922 (Tenn. Ct. App. 2010) we affirmed a trial court's order "granting [defendants'] motions to dismiss" even though we held that the motions were converted into summary judgment motions by consideration of materials outside the pleadings. *Id*. at 924, 926. We took the approach of simply reviewing the trial court's order pursuant to the standards of Tenn. R. Civ. P. 56 to determine whether the claims failed as a matter of law. We will follow that same approach in the present case.

We note the Defendants' repeated mention, both in the trial court and this court, of the chancery court case. It is undisputed that the chancery court case is still pending and that no judgment was entered against the Plaintiff in his individual capacity. We have been presented no authority and no reasoned argument why a judgment in the chancery court against some person or entity other than the plaintiff could bar any of his claims. We therefore hold that the judgment in chancery court does not furnish a basis for the dismissal of any of the Plaintiff's claims.

If the claims are barred, the bar must be based upon the judgment of the bankruptcy court. Neither the order of the trial court nor the brief of the Defendants directly addresses how the judgment of the bankruptcy court constitutes a bar to the entirety of the complaint. The Defendants admit in their brief that the terms " 'res judicata' and 'collateral estoppel' were never mentioned in the . . . [m]otion [to dismiss]." They contend, however, that either the controlling facts were previously determined or were matters that the Plaintiff failed to raise in the previous litigation. The thrust of their argument, as we perceive it, is that the

---

[1]Counsel for the Plaintiff asserted at oral argument that the trial court prohibited discovery, but acknowledged that there is no such order in the record.

bankruptcy court judgment bars all claims in the Plaintiff's complaint either by res judicata or collateral estoppel.

This Court discussed the doctrine of res judicata in *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998), wherein we stated:

> Res judicata is a claim preclusion doctrine that promotes finality in litigation. It bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit.
>
> Parties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action. . . .

*Id*. at 55-56 (citations omitted). In general terms, the principle of res judicata requires a party to raise in a single lawsuit all the claims he or she has that arise from a single incident. *Id*. at 56. Collateral estoppel was discussed in *Mullins v. State*, 294 S.W.3d 529 (Tenn. 2009):

> The party invoking collateral estoppel has the burden of proof. To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.
>
> Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment. Determinations of an issue or issues that are not necessary to a

judgment have the characteristics of dicta and will not be given preclusive effect.

The question of whether collateral estoppel applies is a question of law. Accordingly, summary judgment is an appropriate vehicle for resolving a collateral estoppel claim. Courts reviewing a lower court's decision to grant a summary judgment based on a collateral estoppel claim must review the record de novo without a presumption of correctness. The reviewing courts must also view the evidence in the light most favorable to the non-moving party and must resolve any doubts and draw all inferences in the non-moving party's favor.

*Id* at 535 (citations and footnote omitted).

Under both doctrines, our analysis must include a close examination of the opinion of the bankruptcy court to determine the issues that were decided and those that were not decided. This makes it necessary that we quote extensively from the 35-page opinion of the bankruptcy court. We caution the reader that our editorial changes, indicated in brackets, include a change in the designation of the parties to accommodate our previously defined terms. "The Plaintiff" in the present case, and in the quote that follows, was "the Defendant" in the bankruptcy opinion as originally worded. "The Defendants," as defined in the present case and as labeled in the quotation below, were "the Plaintiffs" in the bankruptcy case. We have reversed the defined terms in the material from the bankruptcy court to conform to the designations in our opinion. The part of the bankruptcy opinion that is pertinent to our analysis follows:

This adversary proceeding is before the court upon the Complaint to Determine Nonsdischargeability of Debt Pursuant to 11 U.S.C. § 523 . . . filed by [the Defendants] . . . asking the court to award them a money judgment and requesting a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2), (4), and/or (6) (2006). The trial was held on May 24, 2010. . . .

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2006).

Pursuant to an Operating Agreement . . . , the parties formed BKS LLC. . . [The Plaintiff] was . . . appointed as managing member of BKS LLC although he was not to receive any

additional payment for serving in that capacity. Under the Operating Agreement, [the Plaintiff's] authority as managing member included all rights and powers necessary to manage the business and affairs of BKS LLC and his responsibilities included, but were not limited to, furnishing financial reports and records of the LLC to the other members, ensuring tax returns were filed, executing documents on behalf of the LLC, conducting the day-to-day management of the LLC, and employing attorneys, certified public accountants, and other persons to assist in the management of the LLC. . . .

* * *

Following its formation, BKS, LLC obtained construction loans with First Tennessee Bank totaling approximately $1,300,000, which were also personally guaranteed by [the Defendants and the Plaintiff], along with an operating line of credit in the amount of $100,000 from First Tennessee Bank and an American Express credit card to be used to pay expenses and finance the LLC's projects. The loan proceeds were used to purchase seventeen lots – thirteen in Montclair subdivision and four in Cantrell Heights subdivision – and in February 2007, [the Plaintiff] pulled the building permits for and BKS LLC began construction of homes on Lots 1, 2 and 3 in Montclair and Lots 20, 28, 29, and 30 in Cantrell Heights. Together with the initial investment of $1,000 funded by the parties, BKS LLC's sole source of funds was derived from the American Express card and the line of credit with First Tennessee Bank.

In early November 2007, [the Defendants] called a meeting to discuss concerns about the time-lines for the houses being built. At roughly that same time, [the Plaintiff] advised [the Defendants] that he expected a 10% builders [sic] fee, and on November 8, 2007, he advised [the Defendants] that he was stopping construction on the homes and would not be attending the meeting they had called. At the November 8 meeting, [the Defendants] removed [the Plaintiff] as managing member of the LLC for not providing financial information, not accounting for money borrowed for construction purposes, starting construction

-13-

on houses outside of BKS LLC, and not managing day-to-day operations in the LLC's best interest. Subsequent to [the Plaintiff's] removal as managing member, Mr. Brown retrieved the LLC's financial records which showed, among other things, that although construction of the homes BKS LLC had started was not completed, the construction loans and line of credit with First Tennessee Bank were nearly depleted, that the American Express credit card had a balance of nearly $100,000, and that an insurance check for reimbursement of a copper theft at Lot 20 of the Cantrell Heights subdivision had been deposited into the bank account for The Spivey Group, Inc. . . . rather than BKS LLC's account. Thereafter, at a special meeting held on November 30, 2007, [the Defendants] voted unanimously to expel [the Plaintiff] from BKS LLC for violations of items (4) through (9) of unnumbered paragraph 6 . . . of the Operating Agreement. [These include "misappropriation of funds or property of the Limited Liability Company."]

* * *

On February 21, 2008, The Spivey Group, Inc., through [the Plaintiff], its president, recorded with the Knox County Register of Deeds a Notice of Mechanic's Lien in the amount of $54,767.59 for work performed at Lot 20 in Cantrell Heights subdivision, which was paid out of the proceeds realized from the sale of that property at closing. At some point thereafter, [the Defendants] brought a lawsuit against The Spivey Group, Inc in the Knox Count Chancery Court and, using the summary of damages prepared by Mr. Brown based upon his comparison of the invoices to the construction draws entered into the record in this adversary proceeding as Trial Exhibit 10, obtained a default judgment against The Spivey Group, Inc. in the amount of $441,481.54.

[The Plaintiff] filed the Voluntary Petition commencing his case under Chapter 7 of the Bankruptcy Code on November 12, 2008, and on March 16, 2009, [the Defendants] timely filed the Complaint initiating this adversary proceeding, requesting a monetary judgment . . .and a determination that the judgment is nondischargeable. [The Defendants] contend that [the Plaintiff]

-14-

obtained monies from them through misrepresentation, false pretenses, and actual fraud, that he embezzled funds from BKS LLC while in a fiduciary role, and that he maliciously intended to cause financial devastation to [the Defendants].

It is within the jurisdiction and authority of the bankruptcy court to adjudicate [the Defendant's] claims and award any necessary damages . . . [citations omitted].

\* \* \*

Notwithstanding Mr. Brown's testimony to the contrary, many of the expenses listed on . . . Trial Exhibit 10 cannot be directly attributable to any fraudulent action by [the Plaintiff] and are thus not recoverable damages by [the Defendants]. Included among those amounts are the expenses incurred by [the Defendants] in order to keep BKS LLC operational after [the Plaintiff's] expulsion . . . .

With respect to the $272,186.32 in monies either spent over the loan amounts or unaccounted for, as shown on . . . Trial Exhibit 10, the court similarly finds that [the Defendants] have proved entitlement to some, but not all of these funds. . . .

\* \* \*

The court agrees that, with respect to any money spent over the loan amount, [the Defendants] have not proved an entitlement to damages against [the Plaintiff]. . . . Accordingly, of the $272,186.32 referenced on . . . Trial Exhibit 10 as being spent over the loan amount or not accounted for, only the unaccounted for funds in the amount of $187,492.93 may be rightfully included in any damages calculation.[2]

---

[2]This includes the [monies] attributed to the copper wiring theft and subsequent reimbursement by State Farm Insurance Company. [The Defendants] proved that [the Plaintiff] deposited the $16,681.32 reimbursement check dated March 13, 2007, into The Spivey Group, Inc.'s bank account; however, they did not prove that [the Plaintiff] spent those funds on projects outside those of BKS LLC. The court also finds [the Plaintiff's] explanation as to why he did not deposit the check into the BKS LLC checking account – that the deposit would be credited toward the loan balance and not available for payment on invoices – to be plausible and within the parties' established routine for payment of invoices by The Spivey Group, Inc. on behalf of BKS LLC.

-15-

* * *

The court likewise finds that [the Plaintiff] is not entitled to the 10% builder's fee in the amount of $30,557.09 included with his mechanic's lien and referenced on . . .[his invoice]. Although [the Plaintiff] testified that he, on behalf of The Spivey Group, Inc., had an agreement with [the Defendants] that he would be paid a 10% builder's fee by BKS LLC there was no contract between The Spivey Group, Inc. and BKS LLC setting forth any such agreement, nor was there any reference within the Operating Agreement or other document in the record that establishes any such agreement. Without a written contract or other such documentation, the court cannot find the existence of any such arrangement, and [the Defendants] are entitled to recover it within their damages.

* * *

As demonstrated by the record, [the Plaintiff] charged a total of $223,444.75 on the American Express card, and of that total, [the Plaintiff] testified that $84,491.36 was for personal charges. Assuming that the entire $73,391.86 payment [that the Plaintiff testified of making] came from The Spivey Group, Inc. funds rather than BKS LLC funds, by his own testimony, [the Plaintiff] owes $11,099.50 above the payment he made towards his admitted personal charges. In addition to that amount, the court also finds that [the Plaintiff] is liable to [the Defendants] for the $38,062.11 for business-related expenses shown on the Transaction Detail Report which are not found on the Job Costs Detail Report, the $971.64 for charges listed on the Job Costs Detail Report as "credit card purchases" not appearing on the Transaction Detail Report, and the $61,235.01 for expenses listed on the Job Costs Detail Report for different amounts than those listed on the Transaction Detail Report for a total of $111,368.26 associated with the American Express card.

Determinations as to the dischargeability of debts are governed by 11 U.S.C. § 523(a), which, as relevant to this adversary proceeding, provides that:

-16-

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –

\* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by –

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

\* \* \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]

\* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a). . . .

\* \* \*

In order to be a nondischargeable debt under subsection (a)(2)(A), there must be a showing of fraud in the inducement; i.e., [the Defendants] must prove that [the Plaintiff] intentionally misled them into personally guaranteeing the construction loans and line of credit and opening the American Express account through fraudulent or material untruths and that they relied upon the untruths when they formed BKS LLC and incurred the liability. Without the initial inducement, it is not sufficient to show that [the Plaintiff] made misrepresentations and/or false statements concerning the financial information after the fact, just as it is not sufficient for a finding under this subsection to show that [the Plaintiff] denied [the Defendants] access to the books and records. The record is clear that the representations

-17-

[the Plaintiff] made when he was approached by [the Defendants] about forming the company that he was a licensed contractor and that he had business relationships with vendors and subcontractors were accurate. Additionally, the court is not convinced that the representation by [the Plaintiff] that he could manage the day-to-day operations was false and made with an intent to deceive and induce, based upon his approximately twelve years of experience in the building field and the fact that he had operated The Spivey Group, Inc. for approximately two years prior to forming BKS LLC with [the Defendants]. Accordingly, based upon the record before the court, [the Defendants] have not met their burden of proof that the debt is nondischargeable under § 523(a)(2)(A).

Section 523(a)(4) provides that debts obtained by embezzlement, larceny, or through fraud or defalcation while acting in a fiduciary capacity are nondischargeable. For the purposes of this subsection and as it relates to this adversary proceeding, embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[Citation in original omitted] [3] . . .

To prove fraudulent misappropriation, the [party opposing discharge] must prove "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." [Citation in original omitted] . . . .

\* \* \*

In his capacity as managing member, [the Plaintiff] was chosen by the parties to have the initial responsibility for setting up the LLC's books and finances and to be responsible for its day-to-day management. In association with these duties and with [the Defendants'] knowledge and acquiescence, [the Plaintiff] requested draws on the construction loans and line of credit, withdrew funds from the BKS LLC account, and deposited them into The Spivey Group, Inc.'s account for disbursements to

---

[3] . . . Only the embezzlement aspect of § 523(a)(4) is at issue in this adversary proceeding.

contractors and vendors on behalf of BKS LLC for its projects. Nevertheless, as previously discussed, [the Plaintiff] misappropriated large sums of BKS LLC funds, presumably for other projects and admittedly for his personal use, both without the authorization or knowledge of [the Defendants]. By using BKS LLC funds for projects other than BKS LLC projects, [the Plaintiff] acted knowingly and fraudulently, and [the Defendants] are entitled to a nondischargeable judgment against him for the amounts misappropriated from BKS LLC.

[The Defendants] also aver the applicability of §523(a)(6) for a "willful and malicious" injury. . . .

\* \* \*

Based upon the record, the court finds that although [the Plaintiff] did exercise dominion and control over funds belonging to BKS LLC, he did not do so to the exclusion of [the Defendants], and they are not entitled to a determination that his actions were willful and malicious for purposes of § 523(a)(6). . . .

The court agrees that [the Plaintiff] acted in conscious disregard to [the Defendants], constituting malicious conduct, but they have not proved that he acted willfully, with an intent to cause them harm, which is likewise required by § 523(a)(6).

\* \* \*

In summary, the court finds that [the Plaintiff] fraudulently misappropriated and embezzled funds which were entrusted to him pursuant to his position as managing member of BKS LLC. The record supports a judgment in favor of [the Defendants] and against [the Plaintiff] in the total amount of $344,604.29, representing $3,961.81 in late fees and missed discounts, $120.18 for failing to return key sensors, $187,492.93 in funds received from the construction draws and line of credit with First Tennessee Bank by the Spivey Group, Inc. but not attributable to any BKS LLC project, a credit of $2,617.69 for interest paid by The Spivey Group, Inc. to First Tennessee Bank but not accounted for by [the Defendants], $13,721.71 for invoices attached to the mechanic's lien filed by [the Plaintiff]

-19-

against Lot 20 Cantrell Heights that had previously been paid with BKS LLC funds, $30,557.09 for the 10% builder's fee also included within the mechanic's lien, and $111,368.26 for charges made by [the Plaintiff] on the American Express card for personal charges and charges which cannot be reconciled. This judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

(Headings omitted; citations to bankruptcy record omitted; our footnotes 2 and 3 are in the original with other footnotes in original omitted; legal citations in original retained except when otherwise indicated in brackets).

It is clear from the record in the present case that the Plaintiff moved the bankruptcy court to give him a new trial. At least one ground for the motion was that the Defendants testified falsely in that trial. The bankruptcy court denied the motion for new trial. The Plaintiff did not appeal the judgment of the bankruptcy court. It has now become final.

With this background, we can now consider whether the bankruptcy court's judgment precludes any of the issues or claims raised by the Plaintiff's complaint in this action. The bankruptcy court's opinion leaves no room for doubt that Brown and King were entitled to expel Spivey from his position as managing partner and as a member of the LLC based upon his misappropriation of funds for his own use. It also leaves no room for doubt that Brown and King were justified in the approach they took in the bankruptcy court. That court found that they proved substantial damages from the Plaintiff's misappropriation of their funds, and that his fraudulent actions justified a finding that the debt would not be discharged. The bankruptcy was commenced by the Plaintiff's "voluntary" petition. Any contention that the Defendants testified falsely or took unjustifiable positions in the chancery court are best left to that court, where the case remains pending.

This leaves for our consideration only the civil conspiracy claim, the defamation claim, and the claim or claims related to Spivey's criminal prosecution:

The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.

*Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

There is nothing in the bankruptcy court's opinion that addresses the conspiracy claim other than as relates to the specific claims that we have already held were determined by the

bankruptcy court. Since there is nothing unlawful in expelling a member that is embezzling money from an entity, and nothing unlawful in proving the damages from that embezzlement and in successfully opposing a discharge of any such damages in bankruptcy, we must treat any actions of the alleged conspiracy that concern these aspects of the complaint as barred. In going forward, we will focus on the alleged defamation and claims related to the criminal prosecution.

We turn first to the defamation claim:

> To establish a prima facie case of defamation, the plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. ***Sullivan v. Baptist Mem'l Hosp.***, 995 S.W.2d 569, 571 (Tenn. 1999) (relying on Restatement (Second) of Torts § 580 B (1977)).

***Hibdon v. Grabowski***, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005). We cannot imagine how it would be that the determination of the dischargeability of the debt would insulate the Defendants from liability for defamation. The bankruptcy court's opinion found that the Plaintiff was liable to the Defendants, but it also found that they had included within their claim certain damages that were simply a cost of doing business and not properly chargeable to the Plaintiff. It further found specifically that, when the parties were forming the LLC, the Plaintiff spoke truthfully with regard to his contractor's credentials and experience. In short, the bankruptcy opinion establishes, if anything, that the parties on both sides were making statements that the true facts do not support. King and Brown admitted in their affidavits filed in the trial court that they made derogatory statements about the Plaintiff. They claimed, however, that any such statements were true, without further elaboration. We are not convinced that a party can shift the burden of production for summary judgment purposes by an affidavit that merely asserts, in blanket form, that every derogatory statement they made was true. We need not decide that in this present case because the Plaintiff countered the Defendants' affidavits with his own that identifies persons to whom statements were made as well as the subject matter of the statements and asserts that they were false. We conclude that issues of material fact are present regarding the defamation claim. Therefore, the trial court erred in granting summary judgment against the Plaintiff on his defamation claim.

We also conclude that there is nothing in the bankruptcy court opinion that defeats the claims related to the unsuccessful criminal prosecution of the Plaintiff. If anything, the bankruptcy court's opinion tends to support the Plaintiff's claim. It found that the Plaintiff's explanation of his handling of the insurance check was plausible and consistent with the

parties' business practices. Further, it found that the Defendants failed to prove that the Plaintiff used the proceeds for something other than to pay legitimate obligations of the LLC.

The only reason that the Defendants offer in their brief, other than the bankruptcy opinion, is that it was police officers and the district attorney's office that did the prosecuting. A person who reports an alleged crime to authorities may nevertheless be held liable for malicious prosecution as we explained in *Spicer v. Thompson*, No. M2002-03110-COA-R3-CV, 2004 WL 1531431 (Tenn. Ct. App. M.S., filed July 7, 2004):

> For a plaintiff to be successful in a malicious prosecution case growing out of an arrest for an alleged criminal act, it must be alleged and proved that: a criminal proceeding has been instituted by the defendant against the plaintiff; such proceeding terminated in favor of accused; there was an absence of probable cause for the proceeding; and, there was malice or a primary purpose other than that of bringing defendant to justice.
>
> > Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable-based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances.
>
> The entry of a nolle prosequi whether or not the defendant in the criminal case has been put in jeopardy is a sufficient termination in favor of the defendant in the criminal prosecution to comply with the rule in malicious prosecution cases that the underlying suit must have been terminated in favor of the defendant.
>
> \* \* \*
>
> *Advice of counsel is an affirmative defense*:
>
> . . . To make out this defense, the burden was . . . to prove that he honestly sought such advice, *that he fully disclosed to his counsel all the material*

-22-

> *facts he knew and all he could have known by reasonable diligence*, that his counsel advised the prosecution, and that he acted in good faith upon such advice.
>
> *The district attorney general is counsel whose advice can constitute a defense to a malicious prosecution action.* This affirmative defense is dependent upon full, correct and honest disclosure to counsel of all material facts within the knowledge of the prosecutor or that could have been ascertained by reasonable diligence. This Court has held:
>
> > But the party must state not only all material facts within his knowledge but all facts which he had reasonable ground to believe existed at the time of making the statement, or all material facts which he could have ascertained by reasonable diligence.

*Id*. at *23-25 (emphasis added; citations omitted). The Defendants did not even assert in their statement of undisputed facts that they fully disclosed all matters known to them that would have impacted the probable cause evaluation of the magistrate and district attorney general. Even if they had, the filings made on behalf of the Plaintiff specifically assert and explain that there were material omissions from the Defendants' affidavits and statements to prosecutors that instigated the criminal prosecutions. Moreover, the Defendants fail to even mention anywhere in their brief to this court or in their filings in the trial court the affirmative defense of advice of counsel. For all of these reasons, we conclude that the Defendants did not conclusively establish the affirmative defense of advice of counsel so as to defeat the claims related to the criminal prosecutions.

Before leaving this point, we will consider whether the Plaintiff was obligated to litigate the defamation claim or the malicious prosecution and related claims in the bankruptcy court. Neither party addresses this point in the briefs, other than maybe a conclusory suggestion by the Plaintiff that it makes no sense to litigate personal injury torts in bankruptcy court. Our research confirms the Plaintiff's suggestion. "In the absence of very special circumstances or obvious prejudice, the bankruptcy court should abstain from resolving controversies which do not involve the property or administration of a debtor's estate, and where another court provides a more suitable forum." *In re Marrs*, 36 B.R. 22, 24 (Bankr. M. D. Tenn.1983) (internal citations omitted). Our research produced one case that reads *Marrs* as authority for abstaining, on the court's own motion, from deciding a

debtor's counterclaim for malicious prosecution against his creditor in an adversary action. *In re Fornaro*, 402 B.R. 104, 110 (Bankr. D. N.J. 2009). We conclude that the Plaintiff was not obligated to bring his conspiracy, defamation and claims related to the criminal prosecution in the bankruptcy case. We further hold that the trial court erred in dismissing the claims on what we have treated as summary judgment.

The last issue for our consideration is whether the trial court erred in awarding sanctions pursuant to Tenn. R. Civ. P. 11. Rule 11.01 requires that every pleading be signed by a pro se party or the attorney of a party that is represented. Rule 11.02 makes that signature equivalent to a certification that a reasonable inquiry has been made into the facts and law and that the pleading is not filed for an improper purpose, "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11.03 allows a trial court, subject to expressly stated conditions, to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation." The conditions expressly stated in Tenn. R. Civ. P. 11.03 that are pertinent to this appeal are:

> . . . A motion for sanctions under this rule shall be made separately from other motions . . . and *shall describe the specific conduct alleged to violate subdivision 11.02. . . .*
>
> \*   \*   \*
>
> . . . When imposing sanctions, *the court shall describe the conduct determined to constitute a violation of this rule* and explain the basis for the sanction imposed.

Tenn. R. Civ. P. 11.03(1)(a) and (3)(emphasis added).

As we stated in *Marra v. Bank of New York*, 310 S.W.3d 329 (Tenn. Ct. App. 2009):

> In determining whether . . . conduct is sanctionable under Rule 11, the trial court must determine if such conduct was reasonable at the time the document was signed. *Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992) (*quoting Andrews v. Bible*, 812 S.W.2d 284, 288 (Tenn.1991)). "[T]he question of whether a Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the attorney's (and client's) conduct." *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 765 (Tenn. Ct. App.

2001).  As such, we review a trial court's ruling on a Rule 11 motion for an abuse of discretion.  ***Krug***, 838 S.W.2d at 205.

*Id*. at 340.  The mere fact that a claim ultimately fails does not make it per se frivolous.  ***Id***. at 343.  Any doubts as to the merits of the underlying action, and the motion for sanctions, should be resolved against awarding sanctions.  ***Id***.

The Plaintiff points out that neither the motion nor the trial court's order describe the specific conduct alleged to have violated Rule 11.  The motion for sanctions contains little more than the conclusory allegation that the "[c]omplaint has no merit and was filed for the purpose of harassment."  The order granting sanctions, which was part of the order that dismissed the case, states only that "[t]he Court also granted the Defendants' Motion for Rule 11 Sanctions."  Apparently, the trial court attempted to cure any deficiencies in the motion and order by directing the Defendants to file a "Bill of Particulars."  However, the order did not require that the filing describe the specific conduct alleged to violate the Rule 11; it only requires that the Defendants state "specifically what sanctions [they] are seeking and against whom the Defendants wish for the sanctions to be assessed . . . ."  Furthermore, we have only the front page of the "Bill of Particulars" in the record, and that page does not describe specific conduct that allegedly justifies sanctions.  Under these circumstances, we would not be justified to presume that the trial court conducted the "highly fact-intensive determinations" as to specific conduct necessary to support an award of sanctions.

However, we need not base our analysis of the award of sanctions on the procedural deficiencies alone.  The only justification the Defendants offer in their brief for the award of sanctions is that the claims were either without merit or already litigated.  We have expressly held that some of the claims were not shown to be without merit.  As to the ones that were litigated, they were not litigated to conclusion by the time the complaint in this case was filed.  The bankruptcy opinion was not filed until after the complaint was filed, and the denial of the motion for new trial happened just shortly before the trial court dismissed the case.  The chancery court judgment was not against the Plaintiff, and therefore determined nothing with regard to the present case.  The trial court's award of sanctions can only be based upon the same erroneous premise that the court used to dismiss the complaint in its entirety, that premise being that the judgment of the bankruptcy court barred all of the Plaintiff's claims in the present case as a matter of law.  Accordingly, we conclude that the trial court abused its discretion in awarding sanctions against the Plaintiff and his attorney.

The Defendants suggest that we should even increase the award of sanctions against the Plaintiff for the filing a frivolous appeal.  For the reasons we have already articulated, we do not find the appeal to be frivolous.  The Defendants' request that we make the attorney for the Plaintiff responsible for all of the sanctions jointly with the Plaintiff is now moot.

## V.

The judgment of the trial court is affirmed in part and vacated in part. That part of the judgment dismissing the Plaintiff's claims for expelling him from the LLC, forcing him into bankruptcy, and opposing his discharge in bankruptcy is affirmed. That part of the judgment dismissing the Plaintiff's claims for defamation and for wrongfully prosecuting him, as well as conspiracy to accomplish those wrongs, is vacated. That part of the judgment awarding sanctions against the Plaintiff and his attorney is vacated. Cost on appeal are taxed to the appellees, David N. King and Anthony G. Brown. This case is remanded, pursuant to applicable law, for further proceedings.

_____
CHARLES D. SUSANO, JR., JUDGE